[No. 77753-5. En Banc.]
Argued September 21, 2006.     Decided May 17, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. GAYLON LEE THIEFAULT, *Petitioner*.

*Oliver R. Davis* (of *Washington Appellate Project*), for petitioner.

*Janice E. Ellis, Prosecuting Attorney*, and *Seth A. Fine* and *Mary K. Webber, Deputies*, for respondent.

¶1 OWENS, J. — Petitioner Gaylon Lee Thiefault is an inmate sentenced to life with no possibility of parole or early release under Washington's Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW. Thiefault contends that his sentencing counsel was ineffective by failing to object to the superior court's comparability analysis regarding a prior Montana conviction. We hold that the trial court's comparability analysis was erroneous. We further hold that the failure of Thiefault's counsel to object to the erroneous comparability analysis constitutes ineffective assistance of counsel for purposes of the Sixth Amendment to the United States Constitution. Accordingly, we vacate Thiefault's sentence and remand for resentencing.

## FACTS

¶2 Following a jury trial and conviction for indecent liberties by forcible compulsion and attempted second degree rape, the Snohomish County Superior Court sentenced Thiefault to life in prison with no possibility of parole under the POAA. The court found that Thiefault was a persistent offender with three prior convictions, including two foreign offenses—an attempted robbery conviction from Montana and a previous federal aggravated sexual assault conviction. The superior court conducted a comparability analysis of the out-of-state convictions to their Washington counterparts. The court found that the Montana and federal convictions were legally comparable to their Washington counterparts and thus sentenced Thiefault to life in prison with no possibility of parole. Verbatim Report of Proceedings (VRP) at 27 ("It is clear to this court that the Montana attempted robbery does fit within the second degree [attempted] robbery elements as defined in the statutes.").

¶3 Thiefault appealed, arguing in part that his conviction for indecent liberties and attempted second degree rape violated double jeopardy and that his federal sexual assault conviction could not be considered under the POAA's two-strike law. The Court of Appeals agreed and granted Thiefault's appeal on those issues. *State v. Thiefault,* noted at 116 Wn. App. 1059, 2003 Wash. App. LEXIS 718, at *11. The court reversed Thiefault's indecent liberties conviction and remanded for resentencing. *Id.*

¶4 A different attorney represented Thiefault during resentencing and did not object to the comparability of the prior offenses: "I'm not . . . raising that argument because my understanding is that's already been determined." VRP at 39. The superior court incorporated its comparability findings from the previous sentencing, found that Thiefault constituted a persistent offender under the POAA's three-strikes law, and sentenced him to life with no possibility of parole.

¶5 Thiefault again appealed. The Court of Appeals affirmed but remanded to correct scriveners errors. *State v. Thiefault*, noted at 128 Wn. App. 1056, 2005 Wash. App. LEXIS 1896, at *2. We granted Thiefault's petition for review. *State v. Thiefault*, 157 Wn.2d 1002, 136 P.3d 758 (2006).

## ISSUE

¶6 Did Thiefault receive ineffective assistance of counsel when his attorney failed to object to the trial court's comparability analysis?[1]

## ANALYSIS

■ ■ ¶7 *Standard of Review.* Courts conduct de novo review of a sentencing court's decision to consider a prior conviction as a strike. *State v. Ortega*, 120 Wn. App. 165, 171, 84 P.3d 935 (2004), *review granted in part and remanded*, 154 Wn.2d 1031 (2005). Other questions of law are likewise reviewed de novo. *Berger v. Sonneland*, 144 Wn.2d 91, 103, 26 P.3d 257 (2001).

■ ¶8 *Ineffective Assistance of Counsel.* Thiefault contends that he received ineffective assistance of counsel because his attorney did not object to the superior court's comparability finding regarding the Montana conviction. We agree. To prevail on his claim of ineffective assistance of counsel, Thiefault must overcome the presumption of effective representation and demonstrate (1) that his lawyer's performance in not objecting to the comparability of his offenses was so deficient that he was deprived "counsel" for Sixth Amendment purposes and (2) that there is a reasonable probability that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996); *see also State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

■ ■ ¶9 In order to ascertain whether Thiefault's counsel was deficient under *Strickland*'s first prong, this court

---

[1] Because this issue is dispositive, we need not reach Thiefault's other arguments.

must conduct a comparability analysis of the Montana conviction. Washington law employs a two-part test to determine the comparability of a foreign offense. A court must first query whether the foreign offense is legally comparable—that is, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense. If the elements of the foreign offense are broader than the Washington counterpart, the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). In making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005); *State v. Farnsworth*, 133 Wn. App. 1, 22, 130 P.3d 389 (2006); *Ortega*, 120 Wn. App. at 171-74. If a court concludes that a prior, foreign conviction is neither legally nor factually comparable, it may not count the conviction as a strike under the POAA. *Lavery*, 154 Wn.2d at 258 ("We conclude that Lavery's 1991 foreign robbery conviction is neither factually nor legally comparable to Washington's second degree robbery and therefore not a strike under the POAA.").

¶10 In the instant case, the Court of Appeals found that Thiefault satisfied the first prong of the *Strickland* test and demonstrated that his lawyer provided deficient representation for Sixth Amendment purposes. The court held that the Montana offense was broader than its Washington counterpart, in part because the Montana statute required a lesser mens rea. The court thus concluded that the Montana conviction was not legally comparable to Washington's version. It further held that it could not determine if the offenses were factually comparable because the supe-

rior court's record did not include facts Thiefault admitted.[2] Thus, it could not determine whether the Montana offense was factually comparable to Washington's.

¶11 Nonetheless, the court held that Thiefault could not satisfy *Strickland*'s second prong and establish with reasonable probability that his counsel's failure to object to the comparability analysis prejudiced his case. The court reasoned that the superior court would likely have given the State the opportunity to obtain information properly establishing the facts underlying Thiefault's Montana conviction had his attorney argued that the convictions were not comparable. The court further reasoned that Thiefault did not demonstrate that there was a reasonable probability that the facts underlying the Montana conviction would not have satisfied the Washington crime. Consequently, the court held that Thiefault's counsel was not ineffective.

¶12 In his petition for review, Thiefault contends that the Court of Appeals erred by finding that he could not meet *Strickland*'s second prong. According to Thiefault, the record demonstrates that the State previously sought to obtain all the possible documentation of his Montana conviction and did not have it at the time of sentencing. He thus challenges the Court of Appeals' conclusion that the State would have been able to obtain the proper documentation if the superior court granted it a continuance. The State, on the other hand, contends that the information would likely contain the same facts as the motion for leave to file information.[3]

---

[2] The information the State provided to the superior court regarding the Montana conviction included a motion for leave to file information, an affidavit from a prosecutor, and the judgment. The State did not produce the actual information or guilty plea agreement. Further, although the motion for leave to file information and the affidavit both described Thiefault's conduct, neither of the documents contained facts that Thiefault admitted, stipulated to, or that were otherwise proved beyond a reasonable doubt. *See Lavery*, 154 Wn.2d at 258.

[3] The State also contends that Thiefault's counsel was not deficient because the law existing at the time of Thiefault's September 30, 2003, sentencing did not require a court to rely upon facts admitted by the defendant. This argument is without merit. Prior to Thiefault's 2003 sentencing, both case and statutory law required a sentencing court to find that the prior convictions were comparable.

■ ¶13 We hold that Thiefault received ineffective assistance of counsel under *Strickland*. The Court of Appeals correctly concluded that the Montana attempted robbery statute is broader than its Washington counterpart. The Court of Appeals also correctly found that the motion for leave to file information, the prosecutor's affidavit, and the judgment were insufficient to establish factual comparability. Thus, Thiefault's attorney provided deficient representation under *Strickland*'s first prong when he did not object to the superior court's comparability analysis. The Court of Appeals improperly found that such deficient representation did not prejudice Thiefault. Although the State may have been able to obtain a continuance and produce the information to which Thiefault pleaded guilty, it is equally as likely that such documentation may not have provided facts sufficient to find the Montana and Washington crimes comparable; in which case, the superior court could not have deemed the Montana conviction a "strike" for purposes of the POAA. We therefore vacate Thiefault's sentence and remand the case to superior court to conduct a factual comparability analysis of the Montana conviction.[4]

---

*See, e.g., Morley*, 134 Wn.2d at 606. Here, the superior court improperly determined that the Montana conviction was legally comparable with Washington's statute. Because the superior court determined that Montana and Washington had comparable elements, it did not reach the second stage of the comparability analysis and examine Thiefault's specific conduct. Thus, under the law in existence at the time of sentencing, Thiefault's counsel was deficient by not objecting to the superior court's conclusion that the convictions were legally comparable. Moreover, case law at the time of sentencing also required a sentencing court to examine reliable evidence, such as an information. *Id.*

[4] Remand for resentencing with the inclusion of the Montana offense is the appropriate remedy where, as in this case, the trial counsel fails to object to the State's evidence of a prior conviction. *See, e.g., State v. Ford*, 137 Wn.2d 472, 485-86, 973 P.2d 452 (1999) ("Accordingly, where, as here, the defendant fails to specifically put the court on notice as to any apparent defects, remand for an evidentiary hearing to allow the State to prove the classification of the disputed convictions is appropriate."); *accord State v. McCorkle*, 88 Wn. App. 485, 500, 945 P.2d 736 (1997) (noting that remand without another opportunity to prove the classification of a prior offense is the appropriate remedy if the defendant objects to the State's evidence and the State then fails to satisfy its burden), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999). The State bears the burden of proving the existence of a prior conviction. *Ford*, 137 Wn.2d at 480-81. However, where the issue has not been fully argued before the trial court and the defendant does not object to the evidence, the State retains an opportunity to prove the classification

¶14 Thiefault contends that upon remand he has a right to a jury determination of his prior conviction. Thiefault argues that the United States Supreme Court holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and most recently in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), require a jury to determine whether a prior conviction is comparable.[5]

¶15 This court has repeatedly rejected similar arguments and held that *Apprendi* and its progeny do not require the State to submit a defendant's prior convictions to a jury and prove them beyond a reasonable doubt. *See, e.g., Lavery*, 154 Wn.2d at 256-57; *State v. Smith*, 150 Wn.2d 135, 143, 75 P.3d 934 (2003), *cert. denied*, 541 U.S. 909 (2004); *State v. Wheeler*, 145 Wn.2d 116, 34 P.3d 799 (2001), *cert. denied*, 535 U.S. 996 (2002); *see also Ortega*, 120 Wn. App. 165; *accord Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (holding that the State need not prove the fact of a prior conviction to a jury).

¶16 We recently rejected this argument in *Lavery*. As in the instant case, the defendant in *Lavery* was sentenced to life after the superior court found that a prior federal robbery conviction constituted a strike under the POAA. 154 Wn.2d at 253. Upon review, the court held that Lavery's federal robbery conviction was broader than its Washington counterpart and therefore not legally comparable. *Id.* at

---

of an offense upon remand. *Id.* at 485-86. Here, the trial court determined that Thiefault's prior conviction was legally comparable and thus did not reach the issue of factual comparability. Moreover, Thiefault did not object to the erroneous legal comparability ruling. As a result, the State did not have to establish factual comparability. In such situations, the proper remedy is remand to the trial court where the State has the opportunity to satisfy its burden of proving factual comparability.

[5] In *Apprendi*, the Court held that under the Fourteenth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Court found that this state's sentencing procedure, which permitted judges to enhance a defendant's sentence based on information the State had not proved to a jury beyond a reasonable doubt, violated a defendant's Sixth Amendment right to a jury trial. 542 U.S. at 305.

256. The court thus turned to a factual comparison of the respective crimes and whether *Apprendi* and its progeny applied. The *Lavery* court predicated its analysis on the holding that a life sentence without possibility of parole constitutes a penalty beyond the statutory maximum and thus implicates *Apprendi*. *Id*. It further held that *Apprendi* does not apply where the State seeks to prove the existence of a prior conviction but does apply when a court must look to the facts underlying a foreign offense to determine its comparability under the POAA. *Id*. at 256-57; *accord Ortega*, 120 Wn. App. at 172 ("[W]e conclude underlying facts that were not found by the trier of fact beyond a reasonable doubt may not be used to increase the penalty of a subsequent conviction beyond the statutory maximum."). It then examined the superior court's record and concluded that it was devoid of any information admitted, stipulated to, or proved beyond a reasonable doubt. *Lavery*, 154 Wn.2d at 258. The court concluded that Lavery's federal conviction could not count as a strike under the POAA. *Id*. The *Lavery* court did not hold that *Apprendi* required a jury determination of facts regarding a prior conviction.

¶17 In an analogous case, the United States Supreme Court took a similar approach and limited the scope of judicial fact-finding but did not extend *Apprendi* to require a jury determination of fact. In *Shepard v. United States*, 544 U.S. 13, 24, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), the Court held that a trial court may not look to police reports or complaint applications when determining whether to enhance a defendant's sentence under the Armed Career Criminal Act of 1984 (ACCA).[6] The Court reasoned that a disputed fact regarding a prior conviction was "too much like the findings subject to . . . *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Id*. at 25. Thus, the *Shepard* Court limited the trial court's factual inquiry to "the terms of the charging document, the terms of a plea agreement or

---

[6] The ACCA dictates a 15-year sentence for defendants who possess a firearm after three prior convictions for serious or violent offenses. 18 U.S.C. § 924(e)(1).

transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26. The Court declined to extend *Apprendi's* holding to require a jury determination of a defendant's prior convictions under the ACCA. *Id.*

¶18 Thus, upon remand, the superior court may not use Thiefault's prior Montana conviction as a strike under the POAA, unless the State satisfies its burden of proving that the Montana conviction is factually comparable based on facts Thiefault admitted to, stipulated to, or that were proved beyond a reasonable doubt.[7] If the superior court is unable to determine that Thiefault's Montana attempted robbery conviction is factually comparable to Washington's attempted robbery statute through examination of the appropriate documents, it may not count the Montana offense as a strike under the POAA.

## CONCLUSION

¶19 We vacate Thiefault's sentence and remand for re-sentencing. We direct the superior court to conduct a factual comparability analysis to determine whether the conduct underlying Thiefault's Montana conviction consti-tutes attempted robbery under Washington's narrower statute. In making such a determination, the superior court may rely on only those facts that Thiefault stipulated or admitted to or those that were proved beyond a reasonable doubt.

C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.

---

[7] Thiefault makes a labored argument that double jeopardy precludes the superior court from considering the Montana conviction in its resentencing. Thiefault contends that his rape conviction is a lesser included offense within his life sentence with no possibility of parole. Such a finding would require a considerable extension and attenuation of the Supreme Court's ruling in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and the Court denies Thiefault's argument. *Id.* at 605 (holding that aggravating circumstances are "'the functional equivalent of an element of a greater offense'" (quoting *Apprendi*, 530 U.S. at 494 n.19)). Because we deny Thiefault's argument as a basis of relief, we need not reach the State's motion to strike this issue.

¶20 SANDERS, J. (concurring) — The majority concludes (1) the sentencing court improperly found Gaylon Lee Thiefault's prior Montana attempted robbery conviction legally comparable to Washington's crime of second degree attempted robbery and (2) Thiefault's counsel's failure to object to that finding constitutes ineffective assistance of counsel. The majority therefore vacates Thiefault's sentence and remands for resentencing based on whether the facts surrounding Thiefault's Montana conviction would constitute a crime under Washington law. I concur in the result; however, I write separately to emphasize the general rule that the State is held to the existing record on remand. *State v. McCorkle*, 88 Wn. App. 485, 500, 945 P.2d 736 (1997).

¶21 It is the State's burden to prove an out-of-state conviction is comparable to a Washington crime by a preponderance of the evidence. *State v. Ford*, 137 Wn.2d 472, 479-80, 973 P.2d 452 (1999). Comparability may be shown either by demonstrating legal comparability—the elements of the crimes are legally identical—or factual comparability—the conduct underlying the out-of-state crime would have violated a comparable Washington statute. *Id.* At Thiefault's sentencing hearing, the State claimed Thiefault's Montana conviction was comparable to a Washington crime. The State prepared a factual record[8] and argued in its brief both legal and factual comparability of the two crimes. *See* Clerk's Papers at 55 (State's Sentencing Br., Snohomish Super. Ct. No. 01-1-00167-6) ("At the very least . . . the defendant's particular conduct would have violated the comparable Washington statutes.").

---

[8] In an appendix to the sentencing brief in which the State argued for factual similarity, the State included the following evidence of the facts surrounding Thiefault's Montana convictions: (1) a motion for leave to file information for a Montana crime, (2) an affidavit of the Montana prosecutor, and (3) two Montana judgments. These documents could serve no purpose other than as evidence supporting the State's argument for factual comparability.

¶22 For the purpose of legal comparability, the majority appropriately holds the State to the existing record and finds the crimes not legally comparable. Majority at 416 n.3. The majority also appropriately remands to the trial court "to conduct a factual comparability analysis of the Montana conviction." Majority at 417. This analysis, however, must be conducted on the existing factual record. This approach is consistent with *Ford* because in *Ford* we were careful to limit our holding to the specific facts of that case. *Ford*, 137 Wn.2d at 485 (*"Under the present facts . . .* we recognize that defense counsel has some obligation to bring the deficiencies of the State's case to the attention of the sentencing court." (emphasis added)). The "present facts" referenced in *Ford* included the State's unsubstantiated assertion that certain California convictions would be classified as felonies under Washington law, the State's failure to argue legal or factual comparability in any way, and the trial court's erroneous finding that certain convictions would be classified as felonies under Washington law despite the complete lack of supporting evidence. This case is factually distinguishable from *Ford* in that here the State *has* made a full attempt to argue both legal and factual comparability, as it provided a record supporting both arguments at Thiefault's sentencing.

¶23 Our ruling in *In re Personal Restraint of Cadwallader*, 155 Wn.2d 867, 123 P.3d 456 (2005) is instructive. In *Cadwallader* the State, at sentencing, presented what it believed to be Cadwallader's complete criminal history. Cadwallader did not object to the State's presentation of his criminal history, nor did he object to the characterization of his 1978 rape conviction as a predicate strike offense; accordingly, the trial court accepted Cadwallader's plea of guilty and sentenced him to life as a persistent offender. *Id.* at 870. In April 2000 Cadwallader filed a personal restraint petition arguing his life sentence was invalid because the 1978 rape conviction had "washed out." *Id.* at 871.

¶24 The Court of Appeals opined because Cadwallader failed to object to his criminal history at sentencing

(thereby failing to put the sentencing court on notice that his 1978 conviction had washed out), the State should have the opportunity on remand to prove the presence of a 1985 theft conviction which "interrupted" the wash out period. *Id.* at 871-72. We disagreed, stating, "[g]iven that Cadwallader had no obligation to disclose his criminal history, it follows that he had no obligation to object to the State's failure to include the 1985 Kansas theft conviction in his criminal history." *Id.* at 876.

¶25 The same considerations in *Cadwallader* apply to the case at bar. Here, because Thiefault was under no obligation to prove the comparability of his Washington and Montana offenses (this was exclusively the State's burden), he was under no obligation to object to the State's failure to present evidence sufficient to establish factual comparability. In essence, *Cadwallader* serves as a reminder to the State that it must come to court prepared to meet its primary burden of proof; if it fails to do so, we will not hold the defendant responsible for bringing such deficiencies to the judge's attention.

¶26 Forcing the defendant to "object" to a potential weakness in the State's case makes no sense—it is the State's burden of proof. Whether or not that burden is met is a matter of considering competent evidence, not "objecting" to an otherwise appropriate procedure. We have repeatedly cited *Ford* to emphasize the State's burden in this context, not to eviscerate it. *See, e.g., Cadwallader*, 155 Wn.2d at 877-78 ("A 'defendant is simply not obligated to disprove the State's position, at least insofar as the State has failed to meet its primary burden of proof.'" (quoting *Ford*, 137 Wn.2d at 482)); *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002) ("The burden of establishing criminal history by a preponderance of the evidence lies with the prosecution . . . ." (citing *Ford*, 137 Wn.2d at 477)); *In re Pers. Restraint of Call*, 144 Wn.2d 315, 330, 28 P.3d 709 (2001) (" '[I]t is the State, not the defendant, which bears the ultimate burden of ensuring the record supports the existence and classification of out-of-

state convictions.' " (quoting *Ford*, 137 Wn.2d at 480)). Unquestionably, the court in *Ford* neither held nor implied that any failure to object on the part of defense counsel *must* result in a renewed opportunity for the State to supplement the record of its case on remand.

¶27 Here the sentencing court found the crimes legally comparable, eliminating the need for that court to address factual comparability and obviating the need for an objection, even if appropriate. Accordingly, nothing occurred in the proceeding which could possibly have warranted an objection from Thiefault's counsel. It would make little sense for us to punish Thiefault on remand for failing to object to a supposed error the sentencing court had not committed.

¶28 For the above reasons, I concur in the result and would hold the State to the existing record on remand.

ALEXANDER, C.J., and J.M. JOHNSON, J., concur with SANDERS, J.