**FILED**
**February 2, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32967-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ZACHERY JOHN SCHERBERT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Zachery Scherbert appeals his two convictions for

unlawful possession of a firearm in the first degree. He argues that he received

ineffective assistance of counsel, and that various scrivener's errors in the judgment and

sentence should be corrected. We disagree that Mr. Scherbert received ineffective

assistance of counsel, but agree that multiple scrivener's errors in the judgment and

sentence should be corrected. We therefore affirm his two convictions, but remand for

the trial court to strike various preprinted "X's" in the judgment and sentence.

FACTS

On October 3, 2014, Zachary Scherbert was pulled over in Franklin County for

improper lane travel and suspected driving under the influence. During the traffic stop,

Mr. Scherbert told the state trooper that he had previously been convicted of second degree murder in Nevada. Mr. Scherbert had a loaded .44 caliber black powder pistol in the cab of his pickup truck and an unloaded .50 caliber black powder rifle in the canopy. Based on his prior conviction of "Murder in the Second Degree, NV, Cause #C139746X," the State charged Mr. Scherbert with two counts of unlawful possession of a firearm in the first degree. Clerk's Papers (CP) at 91-92.

The case proceeded to a jury trial. Prior to the start of the trial (and outside of the presence of the jury), Mr. Scherbert's defense counsel told the court the parties stipulated that Mr. Scherbert's prior Nevada conviction for second degree murder was a "serious offense" for the two unlawful possession of a firearm charges. Defense counsel explained that Mr. Scherbert's prior conviction resulted from a guilty plea "with a finding of some mental illness," and he "was remanded and treated." Report of Proceedings (RP) (Dec. 15, 2014) at 5. Pursuant to Mr. Scherbert's wishes, defense counsel told the court that the trial strategy was to avoid "any defenses of diminished capacity or that he's not competent." RP (Dec. 15, 2014) at 5-6. Further, defense counsel noted on the record that he had discussed with Mr. Scherbert the elements the State needs to prove for its case and the ramifications of stipulating to the predicate "serious offense" element, and that Mr. Scherbert "appeared to understand." RP (Dec. 15, 2014) at 6.

2

During the trial, the court instructed the jury that in order to find Mr. Scherbert guilty, the State must prove the following elements beyond a reasonable doubt:

> (1) That on or about October 3, 2014, the defendant knowingly owned a firearm or knowingly had a firearm in his possession or control,
> (2) That the defendant had previously been convicted of a serious offense, and
> (3) That the ownership or possession or control of the firearm occurred in the State of Washington.

RP (Dec. 15, 2014) at 62-63. Pursuant to the stipulation, the trial court instructed the jury that it "shall consider it to be proved beyond a reasonable doubt that prior to the date of October 3, 2014, defendant previously had been convicted of a serious felony offense." RP (Dec. 15, 2014) at 40.

The defense's brief closing statement appeared to focus on the theory that Mr. Scherbert did not knowingly possess a "firearm" under Washington law because he did not believe it was illegal for him to have the black powder weapons. The jury found Mr. Scherbert guilty.

The trial court sentenced Mr. Scherbert to 26 months' confinement. The trial court determined that Mr. Scherbert had an offender score of two based on his prior conviction of second degree murder in Nevada. The State did not attempt to carry its burden of proving the prior conviction or that it was comparable to a Washington crime. Defense counsel did not object to Mr. Scherbert's offender score.

The trial court did not impose either community custody or legal financial obligations (LFOs) on Mr. Scherbert. During the sentencing hearing, Mr. Scherbert stated that he had been unable to work, and the trial judge responded, "I find that you are indigent, unable to pay the court costs." RP (Dec. 16, 2014) at 7. However, the judgment and sentence erroneously contains an "X" next to the following provisions: (1) a finding that the defendant has the ability or likely future ability to pay the LFOs, (2) an order that the defendant pay costs for collecting unpaid LFOs, (3) a condition of community custody that the defendant consents to Department of Correction (DOC) home visits to monitor compliance with community custody, and (4) and another condition of community custody that the defendant agrees to comply with any and all DOC conditions.

Mr. Scherbert appeals.

## ANALYSIS

1. *Whether Mr. Scherbert was denied his right to effective assistance of counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). This court reviews

4

ineffective assistance of counsel claims de novo. *State v. Birch*, 151 Wn. App. 504, 518, 213 P.3d 63 (2009).

A defendant carries the burden of demonstrating ineffective assistance of counsel, and must show "(1) counsel's representation as deficient, that is, it fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different." *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014); *accord State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either part of the test is not satisfied, the inquiry need go no further." *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

"There is a strong presumption that trial counsel's performance was adequate, and exceptional deference must be given when evaluating counsel's strategic decisions." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Further, the defendant is

prejudiced only if "'the result of the proceeding would have been different but for

counsel's deficient representation.'" *Birch*, 151 Wn. App. at 518 (quoting *McFarland*,

127 Wn.2d at 337).

### A. *Stipulation of predicate "serious offense" element*

The first issue is whether Mr. Scherbert's right to effective assistance of counsel

was violated based on the stipulation that Mr. Scherbert had previously been convicted of

a "serious offense." Under RCW 9.41.040(1)(a), a person commits unlawful possession

of a firearm in the first degree "if the person owns, has in his or her possession, or has in

his or her control any firearm after having previously been convicted . . . in this state or

elsewhere of any serious offense as defined in this chapter." "'The existence of a

constitutionally valid prior conviction is an essential element of the offense, one the State

must prove beyond a reasonable doubt.'" *State v. Lopez*, 107 Wn. App. 270, 276, 27 P.3d

237 (2001) (quoting *State v. Reed*, 84 Wn. App. 379, 384, 928 P.2d 469 (1997)).

Typically, the trial court conducts a comparability analysis where "[o]ut-of-state

convictions are classified according to the comparable offense definitions and sentences

provided in Washington law." *State v. Stevens*, 137 Wn. App. 460, 465, 153 P.3d 903

(2007) (citing RCW 9.94A.525(3)). The comparability analysis for the predicate "serious

offense" element for unlawful possession of a firearm is the same comparability analysis

used for classifying prior out-of-state convictions in determining a defendant's offender score. RCW 9.94A.525(3); *see Stevens*, 137 Wn. App. at 465 (unlawful possession of a firearm); *see also State v. Arndt*, 179 Wn. App. 373, 378-79, 320 P.3d 104 (2014) (offender score).

The key inquiry for determining comparability of an out-of-state conviction is whether the defendant could have been convicted under a Washington statute for the same conduct. *State v. Thiefault*, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007) (classifying out-of-state convictions for purposes of persistent offender sentencing). A comparability analysis covers (1) "legal comparability," and (2) "factual comparability." *Arndt*, 179 Wn. App. at 378-79. For "legal comparability," the court will compare the elements of the out-of-state crime to the relevant Washington crime to determine if they are "substantially similar." *Thiefault*, 160 Wn.2d at 415. "If the elements of the foreign offense are broader than the Washington counterpart, the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute." *Id.*

Stipulation to the predicate "serious offense" element for unlawful possession of a firearm in the first degree "may not be made over the defendant's known and express

7

objection." *Humphries*, 181 Wn.2d at 714. "When the parties stipulate to the facts that establish an element of the charged crime, the jury need not find the existence of that element, and the stipulation therefore constitutes a waiver of the 'right to a jury trial on that element,' . . . as well as the right to require the State prove that element beyond a reasonable doubt." *Id.* at 714-15 (quoting *United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996)). Therefore, when the defendant expressly objects, "[t]he decision to stipulate to an element implicates more than merely trial tactics." *Id.* at 714.

However, in the event the defendant does not expressly object to the stipulation of the predicate "serious offense" element, the decision to stipulate to certain facts is an example of a tactical decision to prevent the jury from learning the nature of the defendant's prior conviction. *See State v. Mierz*, 127 Wn.2d 460, 476, 901 P.2d 286 (1995) ("A stipulation as to facts may represent a tactical decision which may or may not bear fruit."); *see also Humphries*, 181 Wn.2d at 720 ("Where an attorney does not request a limiting instruction regarding a prior conviction, courts have applied a presumption that the omission was a tactical decision to avoid reemphasizing prejudicial information."). If defense counsel failed to stipulate to the predicate "serious offense" element and the State attempted to prove the element, there would be a "significant risk that the jury would declare guilt . . . based upon an emotional response to the [prior] conviction rather than

8

make a rational decision based upon the evidence." *State v. Johnson*, 90 Wn. App. 54, 63, 950 P.2d 981 (1998) (the State must accept an "*Old Chief* stipulation"); *see Old Chief v. United States*, 519 U.S. 172, 185, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) ("there can be no question that evidence of the name or nature of the prior offense [necessary to establish a prior qualifying conviction] generally carries a risk of unfair prejudice to the defendant"); *see also* ER 403.

Here, defense counsel's use of the "*Old Chief* stipulation" was a legitimate trial strategy. First, because Mr. Scherbert's prior Nevada conviction was for second degree murder, it was reasonable to stipulate to the predicate "serious offense" element to avoid the possibility of prejudicing Mr. Scherbert in the eyes of the jury. Defense counsel indicated on the record that he told Mr. Scherbert the legal effects of the stipulation and that Mr. Scherbert "appeared to understand." RP (Dec. 15, 2014) at 6. Second, Mr. Scherbert bears the burden of proving ineffective assistance of counsel, and nothing in the record indicates that the State would have been unable to establish comparability.[1]

---

[1] A "serious offense" includes any "crime of violence." Former RCW 9.41.010(18)(a) (2013). Second degree murder in Nevada in 1986 included murder committed with "implied malice," which "'signifies general malignant recklessness of others' lives and safety or disregard of social duty.'" *McCurdy v. State*, 107 Nev. 275, 278, 809 P.2d 1265 (1991) (quoting *Thedford v. Sheriff, Clark County*, 86 Nev. 741, 744, 476 P.2d 25 (1970)). This offense is comparable to first degree manslaughter in Washington, which includes (as it did in 1986) recklessly causing the death of another

9

Finally, "any defenses of diminished capacity or that [Mr. Scherbert is] not competent" were not presented at trial based on Mr. Scherbert's wishes. RP (Dec. 15, 2014) at 5-6. The jury's knowledge of Mr. Scherbert's prior conviction involving some findings of mental illness would have undermined this defense.

Mr. Scherbert has not overcome the strong presumption that defense counsel's stipulation to the predicate "serious offense" element, with his consent, was a legitimate trial tactic. Accordingly, since defense counsel did not perform deficiently, we do not address whether Mr. Scherbert was prejudiced.

B.     *Inclusion of prior out-of-state conviction in offender score without comparability analysis*

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the standard range sentence is established by the current offense seriousness score and the defendant's offender score. RCW 9.94A.530(1); *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). The defendant's offender score is based on the defendant's criminal history, including prior convictions. RCW 9.94A.525; *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004). In determining criminal history based on out-of-state convictions, the sentencing court must determine that the out-of-state crime is comparable

---

person. First degree manslaughter in Washington is a crime of violence and, thus, a serious offense. RCW 9.41.010(3)(a).

10

to a Washington crime. RCW 9.94A.525(3). "Only if the convictions are comparable can the out-of-state conviction be included in the offender score." *Arndt*, 179 Wn. App. at 378. As mentioned above, the offender score comparability analysis for prior out-of-state convictions is the same as the comparability analysis for the predicate "serious offense" element for unlawful possession of a firearm. *Stevens*, 137 Wn. App. at 465 (unlawful possession of a firearm); *Arndt*, 179 Wn. App. at 378-79 (offender score).

In the typical situation, "'the State bears the burden to prove by a preponderance of the evidence the existence and comparability of a defendant's prior out-of-state conviction.'" *Birch*, 151 Wn. App. at 516 (quoting *Ross*, 152 Wn.2d at 230). During the sentencing hearing, "the trial court may rely on no more information than is admitted by the plea agreement, *or admitted, acknowledged, or proved in a trial* or at the time of sentencing." RCW 9.94A.530(2) (emphasis added). Therefore, when the defendant stipulates to the comparability of a prior out-of-state conviction as an element of a crime, the trial court can rely on that stipulation for sentencing purposes.

Mr. Scherbert relies on *Thiefault* for the argument that he received ineffective assistance of counsel based on his attorney not objecting to the inclusion of his prior out-of-state conviction in his offender score without a comparability analysis. However, *Thiefault* held that the defendant received ineffective assistance of counsel when the

11

defense attorney failed to object to a deficient comparability analysis conducted by the

trial court during the sentencing hearing. *See Thiefault*, 160 Wn.2d at 416-17. Mr.

Scherbert's situation is more analogous to *Birch*, where the defendant did not receive

ineffective assistance of counsel because "unlike *Thiefault*, the trial court did not

undertake a comparability analysis because [the defendant] affirmatively acknowledged

the California robbery conviction was properly included in his offender score." *Birch*,

151 Wn. App. at 519-20 (the defendant "fail[ed] to overcome the strong presumption that

defense counsel's representation was effective").

Here, the defense stipulated that Mr. Scherbert "had been convicted in this State or

elsewhere of a serious felony offense" for purposes of the predicate "serious offense"

element for unlawful possession of a firearm. CP at 80. By stipulating to the

comparability of Mr. Scherbert's prior Nevada second degree murder conviction for

purposes of the predicate "serious offense" element, Mr. Scherbert also stipulated to the

comparability of the prior conviction for sentencing purposes. *See* RCW 9.94A.530(2)

(trial court during sentencing may rely on facts "admitted, acknowledged, or proved in a

trial"). As discussed above, this was a completely reasonable trial strategy by the defense.

Mr. Scherbert does not argue, nor does the record indicate, that defense counsel failed to

explain that stipulating to the element at trial would result in the stipulation being used for

12

sentencing. Therefore, Mr. Scherbert has "fail[ed] to overcome the strong presumption that defense counsel's representation was effective" during the sentencing hearing as well. *Birch*, 151 Wn. App. at 520. We conclude that Mr. Scherbert did not receive ineffective assistance of counsel.

2. *Whether the judgment and sentence should be remanded so the trial court can correct the scrivener's errors*

Although the trial court orally found that Mr. Scherbert did not have the ability or future ability to pay LFOs, it failed to strike through the preprinted "X" next to the language that indicated otherwise, and the preprinted "X" requiring Mr. Scherbert to pay collection costs for unpaid LFOs. Moreover, although the trial court correctly did not put an "X" next to the community custody box—as the present convictions do not entail imposition of community custody—a preprinted "X" appears on two community custody provisions. The State concedes that the judgment and sentence should be amended to correct the aforementioned LFO provisions, but argues that the conditions of community custody are irrelevant and do not need to be corrected. Because remand is necessary to strike the aforementioned LFO provisions, we deem it prudent for the trial court also to strike the two aforementioned community custody provisions.

13

No. 32967-4-III
*State v. Scherbert*

Affirmed, but remanded for striking scrivener's errors in judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, J.

Fearing, J.