

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No. 36684-7-III |
| RICARDO MIGUEL MALDONADO, | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |

STAAB, J. — In a timely personal restraint petition (PRP), Ricardo Maldonado challenges the sentence imposed for his 2017 Walla Walla County conviction of attempted second degree murder while armed with a firearm, committed at age 18. Mr. Maldonado claims he was denied effective assistance of counsel at his initial sentencing hearing because his attorney failed to hold the State to its burden of proving that his Oregon juvenile convictions were comparable to Washington felonies for offender score purposes. Following two reference hearings conducted at our request, the Superior Court determined that all of Mr. Maldonado's Oregon convictions were comparable to Washington crimes. We disagree with the Superior Court's analysis and find that the

crimes are not comparable. Having established deficiency and prejudice, we grant Mr.

Maldonado's petition and remand for a full resentencing hearing where Mr. Maldonado

may raise claims of mitigation based on youthfulness.

FACTS

The facts leading to Ricardo Maldonado's conviction are briefly recounted from

this court's opinion, No. 35182-3-III. *State v. Maldonado*, No. 35182-3-III (Wash. Ct.

App. June 12, 2018) (unpublished).[1] Mr. Maldonado traveled by car with three friends,

Raul Madrigal, Leonardo Corona Venegas, and Diego Rivera. The four stopped at some

grain elevators. While Rivera was urinating and had his back turned, one of his friends

shot him eight times. Rivera survived, but is now paralyzed from his waist down. Based

on statements made by Madrigal to police, the State charged Maldonado with attempted

first degree murder while armed with a firearm. At trial, Madrigal testified he saw

Maldonado fire the gun and then hand the gun to Venegas. According to Madrigal,

Venegas tried to shoot Rivera but the gun was empty. Venegas then complained to

Maldonado that he had used all the bullets. Rivera testified differently. He testified he

turned around after he felt the second bullet and saw Venegas shooting. According to

Rivera, Venegas then handed the gun to Maldonado, and Maldonado tried to shoot it.

---

[1] http://www.courts.wa.gov/opinions/pdf/351823_unp.pdf.

The jury found Maldonado guilty of attempted second degree murder and found by special verdict that he was armed with a firearm at the time of the shooting.

The pre-sentence investigation report (PSI) indicated Mr. Maldonado's criminal history was comprised of five Oregon juvenile convictions, including three for second degree burglary and one each for attempting to elude and unauthorized use of a vehicle. The court thus calculated Maldonado's offender score at 2½, rounded down to 2, with a resulting standard range of 168-243 months including the 60-month firearm enhancement. Both the prosecutor and defense counsel agreed the correct score was 2 based on the Oregon convictions. Mr. Maldonado's attorney confirmed with the court that he had no questions in that regard. There was no further colloquy about the offender score or comparability of the Oregon convictions, and the State did not produce copies of those judgment and sentences. At the sentencing hearing, defense counsel advocated for a low-end 168-month sentence. He related his own discussions with Mr. Maldonado and information contained in the PSI that Mr. Maldonado had a troubled family upbringing involving abuse and domestic violence, he had suffered several concussions before the age of 13 that affected his memory of events prior to that age, he did not have a significant criminal history and was not a gang member, he was remorseful for the crime, and he exhibited desire and likelihood for rehabilitation. Defense counsel also asked the court to consider Mr. Maldonado's age of just 19 at the time of sentencing, and that he would be leaving behind two children of his own while in prison. Mr. Maldonado's

3

mother also spoke on his behalf. She said that he had his attorney speak in his defense because he sustained a concussion three or four years ago that affected his ability to explain himself in a manner that would not further incriminate him. Mr. Maldonado declined to make a statement in allocution.

The State recommended a mid-range sentence based on Mr. Maldonado's direct participation in the crime as a shooter (something that he denied) and his lack of taking responsibility for the crime (including fleeing to the east coast after the shooting). *Id.* at 453-54, 447, 444-45. The court imposed a midpoint 206-month sentence. *Id.* at 464-65.

Mr. Maldonado filed a direct appeal and this court affirmed the judgment and sentence. *See Maldonado*, No. 35182-3-III. The mandate was issued on July 27, 2018. Mr. Maldonado filed this personal restraint petition with the court on March 25, 2019. In the petition he claims he was denied effective assistance of counsel because his attorney failed to hold the State to its burden of proving that his five prior Oregon juvenile convictions were comparable to Washington felonies for offender score purposes. In its response, the State conceded it had failed to meet its burden of proof with regard to the out-of-state convictions and requested an evidentiary hearing be ordered to adjudicate the legal and factual comparability of the Oregon offenses.

Our Acting Chief Judge ordered an evidentiary hearing and directed the superior court to determine "(1) the existence and comparability to a Washington offense of each Oregon conviction referenced in the 2017 judgment and sentence, (2) whether, and to

4

what extent, said Oregon convictions are considered the same criminal conduct in computing the current offender score, and (3) the resulting correct offender score." Order for Ref. at 3. An evidentiary hearing was held in April 2020. First Evid. at 5. Finding the first response insufficient, our Acting Chief Judge ordered a second evidentiary hearing. *See* Second Order for Ref. The order for the second evidentiary hearing requested the court make specific determinations on the following questions: "1. Does Oregon's crime of burglary require intent to commit a crime against 'a person or property therein,' as opposed to intent to commit 'any crime?' 2. If the answer to the first question is negative, are the Oregon adjudications factually comparable to any felony crime in Washington? 3. Is the Oregon conviction for eluding factually comparable to RCW 46.61.024 when adjudged against the 'reckless manner' standard as defined in *State v. Naillieux*, 158 Wn. App. 630, 241 P.3d 1280 (2010) ('reckless manner' is not synonymous with 'reckless driving')? 4. Are Mr. Maldonado's deferred disposition orders 'convictions' for purposes of RCW 9.94A.030(9) and .525(3)? 5. What is Mr. Maldonado's offender score in light of the court's answer's to the preceding questions?" *See* Second Order for Ref. at 2-3.

At the second evidentiary hearing, the trial court outlined responses to each of these questions. Second Evid. at 90-98. In regards to the first question, the court found that there was no requirement under the Oregon statute that the crime of burglary require intent that a crime be committed against "a person or property therein." *Id.* at 91.

However, in answering the second question, the court found the Oregon burglary adjudications were factually comparable to the felony crime of Washington burglary in the second degree (RCW 9A.52.030) and residential burglary (RCW 9A.52.025). *Id.* at 92-93. The court supported its finding by citing to the defendant's admissions to the allegations contained in paragraphs one and two of the petition and a statement for probable cause. *Id*. at 93.

Regarding the third question, the trial court found that the Oregon conviction was factually comparable to the Washington crime of attempting to elude a police vehicle. *Id.* at 93-95. However, in doing so, it relied solely on the testimony of an officer about Mr. Maldonado's driving contained in the statement of probable cause. *Id*. Regarding the fourth question, the court determined that in each of the deferred dispositions, the defendant made an admission of guilt on the record and the circuit court made a finding that the defendant was "within the jurisdiction of the Court by reason" of the allegation of the petition. *Id.* at 95-96. Thus, the court concluded that the deferred dispositions were convictions for the purpose of RCW 9.94A.030(9) and .525(3). *Id*. Finally, regarding the fifth question, the court gave Mr. Maldonado a half point for each of the prior convictions, calculating Mr. Maldonado's offender score at two.[2] *Id.* at 96-97.

---

[2] Rounded down from two-and-a-half.

ANALYSIS

A. TIMELINESS OF PRP

Petitioners have one year from when their judgement becomes final to file a PRP.

Here, the judgment and sentence was entered on April 4, 2017. Mr. Maldonado appealed

the decision and the mandate was issued on July 27, 2018. This PRP was filed on March

25, 2019. Therefore, the PRP is timely. *In re Pers. Restraint of McKiearnan*, 165 Wn.2d

777, 781, 203 P.3d 375 (2009).

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Maldonado first claims he was denied effective assistance of counsel at his

original sentencing because his attorney failed to hold the State to its burden of proving

that his five prior juvenile dispositions were comparable to Washington felonies for

offender score purposes.[3] To prevail on an ineffective assistance of counsel claim, the

petitioner must show that counsel's performance was deficient and that the petitioner was

prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.

Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840,

280 P.3d 1102 (2012). The Court in *Strickland* defined prejudice as the "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[3] Mr. Maldonado does not raise the issue of whether Oregon juvenile dispositions
are comparable to Washington convictions.

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

1. Deficient Performance

In order to prove ineffective assistance of counsel, Mr. Maldonado must establish that his trial counsel's performance was deficient. To determine if counsel's failure to hold the State to its burden was deficient, we must conduct a comparability analysis. *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007). Defense counsel's performance is deficient when he or she fails to object to the comparability of out-of-state offenses if the out-of-state offenses are neither legally nor factually comparable. *Id.* at 414-15. Since the trial court did not conduct this analysis at the initial sentencing hearing, we remanded with instructions to conduct the analysis. After an evidentiary hearing, the superior court found that Mr. Maldonado's Oregon dispositions were comparable to Washington crimes. We now review this comparability analysis to determine if counsel's failure to hold the State to its burden at the initial sentencing hearing constitutes deficient performance.

Under the Sentencing Reform Act of 1981, ch. 9.94A RCW, an out-of-state conviction is included in a defendant's offender score if that offense is comparable to a Washington offense. RCW 9.94A.525(3). The State bears the burden of proving by a preponderance of the evidence the existence of prior convictions used to enhance a defendant's sentencing range. *State v. Mendoza*, 165 Wn.2d 913, 920, 205 P.3d 113

(2009). This includes proving the existence and comparability of a defendant's prior out-of-state convictions. *State v. McCorkle*, 137 Wn.2d 490, 495, 973 P.2d 461 (1991) (citing *State v. Ford*, 137 Wn.2d 472, 482-83, 973 P.2d 452 (1999)). This burden must be met, regardless of whether a defendant lodges an objection during the sentencing process. *Ford*, 137 Wn.2d at 482. It is only when a defendant affirmatively acknowledges the facts and information necessary to justify use of a prior conviction in his or her offender score that the State is relieved of presenting evidence documenting the existence of prior convictions. *State v. Hunley*, 175 Wn.2d 901, 912, 287 P.3d 584 (2012).

The comparability analysis is a two-part test that first asks whether the foreign offense is legally comparable to that of a Washington statute. *Thiefault*, 160 Wn.2d at 415. The offenses are legally comparable where the elements of the foreign offense and the Washington offense are substantially similar. *Id*. If the offenses are not legally comparable, the court must then determine whether they are factually comparable. *Id*.

Factual comparability requires that the actual conduct underlying the foreign offense would have resulted in a violation of the Washington statute. *Id*. However, the facts a court can rely on in determining factual comparability are limited. *State v. Arndt*, 179 Wn. App. 373, 389, 320 P.3d 104 (2014). "[S]entencing courts may only rely on facts in the out-of-state record that are admitted or proved to the fact finder beyond a reasonable doubt in the out-of-state conviction." *Id*. at 389 (citing *In re Pers. Restraint of Lavery*, 154

9

Wn.2d 249, 258, 111 P.3d 837 (2005); *State v. Ortega*, 120 Wn. App. 165, 174, 84 P.3d 935 (2004)). "While it may be necessary to look into the record of a foreign conviction to determine its comparability to a Washington offense, the elements of the charged crime must remain the cornerstone of the comparison. Facts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial." *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). Where an out-of-state conviction is neither legally nor factually comparable to a Washington offense a sentencing court may not count the conviction in a defendant's offender score. *Arndt*, 179 Wn. App. at 380 (citing *Thiefault*, 160 Wn.2d at 415).

*a. Oregon Disposition for Second Degree Burglary*

In this case, one-and-a-half points were added to Mr. Maldonado's offender score for three deferred dispositions of second degree burglary in Oregon. Second Evid. at 97. The applicable Oregon statute provides, "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully *in a building with intent to commit a crime therein*." ORS 164.215(1) (emphasis added). Under the Oregon statute, "'Building,' in addition to its ordinary meaning, *includes any booth, vehicle, boat, aircraft or other structure* adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building." ORS 164.205(1) (emphasis added).

10

The Washington statute for burglary in the second degree provides: "A person is guilty of burglary in the second degree if, with intent to commit a crime *against a person or property therein*, he or she enters or remains unlawfully in a building *other than a vehicle or a dwelling*." RCW 9A.52.030(1) (emphasis added). Additionally, the Washington statute for residential burglary provides that "[a] person is guilty of residential burglary if, with intent to commit a crime *against a person or property therein*, the person enters or remains unlawfully *in a dwelling other than a vehicle*." RCW 9A.52.025(1) (emphasis added).

Mr. Maldonado's case was remanded to superior court for a reference hearing to make a comparability analysis. At this hearing, the State admitted and the trial court found that the two crimes were not legally similar because the Oregon statute simply requires "intent to commit a crime therein," while the Washington statute requires a narrower "intent to commit a crime against a person or property therein." We note that the Washington statute is also narrower than that of Oregon because it applies to "a building other than a vehicle or a dwelling," while that of Oregon simply applies to "a building." The Oregon definition of "building" specifically includes certain categories of vehicles, while the Washington statute specifically excludes vehicles.

As part of his first deferred disposition for second degree burglary, Mr. Maldonado admitted to the following:

11

> The defendant, on or about January 16, 2013, in Umatilla County, Oregon, did unlawfully and knowingly enter and remain in a building located at 303 S. Mill St, Milton-Freewater, OR, Oregon, with the intent to commit the crime of theft therein; contrary to statute and against the peace and dignity of the State of Oregon.

Second Evid. at 9. The admission satisfies the narrower Washington requirement of intent to commit a crime against a person or property therein by stating that Mr. Maldonado intended to commit the crime of theft in the building. However, he only admitted to unlawful entry of a building. The requirement that the building not be a vehicle or dwelling is not satisfied. Thus, the crimes are not factually comparable.

As part of the deferred disposition for the two other burglary crimes, Mr. Maldonado admitted to paragraphs one and two of the related petition. Under paragraph one, Mr. Maldonado admitted:

> The defendant, on or about October 28, 2012, in Umatilla County, Oregon, did unlawfully and knowingly enter and remain in a building located at or about 301 Catherine Ave, Milton-Freewater, OR, Oregon, with the intent to commit the crime of theft therein; contrary to statute and against the peace and dignity of the State of Oregon.

Second Evid. at 37. The admission in paragraph two repeated word for word paragraph one.[4] *Id.* at 38.

---

[4] Count 1 and Count 2 state the exact same things. Second Evid. at 37-38. It appears from the order of restitution in this case that this was a typo and the second should have stated "299 Catherine Ave" in lieu of "301 Catherine Ave." *Id.* at 88.

The State and the trial court at the evidentiary hearing improperly relied on the statement contained in the probable cause for custody in determining the crimes were factually similar. The facts laid forth in this document were never found by the Oregon court nor admitted to by the defendant. Therefore, they should not be relied on in the factual comparability analysis. None of the statements admitted to by Mr. Maldonado as part of his deferred disposition clarify what kind of "building" he entered for the purpose of the burglary. Oregon, by definition, includes certain categories of vehicles, while both Washington burglary statutes categorically exclude vehicles from the definition of building.[5] Thus, the burglary crimes committed in Oregon are not factually similar to the crime of either burglary in the second degree or residential burglary in Washington.

b. *Oregon Disposition for Attempting to Elude Police With a Vehicle*

One-half of a point was added to Mr. Maldonado's offender score for his deferred disposition for attempting to elude police with a vehicle. Second Evid. at 97. The Oregon statute provides:

> A person commits the crime of fleeing or attempting to elude a police officer if:
>   (a) The person is operating a motor vehicle; and
>   (b) A police officer who is in uniform and prominently displaying the
>       police officer's badge of office or operating a vehicle appropriately
>       marked showing it to be an official police vehicle gives a visual or

---

[5] While Mr. Maldonado admitted that the "building" was "located at or about" a certain address, this admission alone is insufficient since a vehicle may also be located at an address when it is burglarized.

audible signal to bring the vehicle to a stop, including any signal by
hand, voice, emergency light or siren, and either:
(A) The person, while still in the vehicle, knowingly flees or attempts
to elude a pursuing police officer; or
(B) The person gets out of the vehicle and knowingly flees or attempts
to elude the police officer.

ORS 811.540(1).

The Washington statute that is the most analogous is as follows:

Any driver of a motor vehicle who willfully fails or refuses to immediately
bring his or her vehicle to a stop *and who drives his or her vehicle in a
reckless manner* while attempting to elude a pursuing police vehicle, after
being given a visual or audible signal to bring the vehicle to a stop, shall be
guilty of a class C felony. The signal given by the police officer may be by
hand, voice, emergency light, or siren. The officer giving such a signal
shall be in uniform and the vehicle shall be equipped with lights and sirens.

RCW 46.61.024(1).

The statutes are not legally comparable. The Washington statute requires that the

individual be driving in a reckless manner while attempting to elude the police, while the

Oregon statute does not, making the Oregon statute broader than that of Washington. As

part of the deferred disposition, the defendant admitted to the following statement:

The defendant, on or about January 16, 2013, in Umatilla County, Oregon,
being an operator of a motor vehicle upon a public highway or premises
open to the public, and having been given a visual or audible signal to stop
by a pursuing police officer who was wearing a uniform, prominently
displaying the officer's badge of office, or who was operating a vehicle
appropriately marked showing it to be an official police vehicle, did while

14

> still in the vehicle unlawfully and knowingly flee or attempt to elude said officer; contrary to statute and against the peace and dignity of the State of Oregon.

Second Evid. at 9. There was no admission by defendant to driving in a reckless manner or to facts that would indicate he was driving in a reckless manner. Again, the State and the trial court improperly relied on the statement of probable cause whose facts were never found by the court nor admitted to by the defendant. Therefore, they should not be relied on in the factual comparability analysis. Thus, the deferred disposition for attempting to elude is not factually similar to the Washington crime.

### c. *Oregon Disposition for Unauthorized Use of a Vehicle*

One-half of a point was added to Mr. Maldonado's offender score for a deferred disposition for unauthorized use of a motor vehicle. Second Evid. at 97. The Oregon statute provides:

> (1) A person commits the crime of unauthorized use of a vehicle when:
>    (a)(A) The person knowingly takes, operates, exercises control over or otherwise uses another's vehicle, boat or aircraft;
>       (B) The person is *aware of and consciously disregards a substantial and unjustifiable risk* that the owner of the vehicle, boat or aircraft does not consent to the taking, operation or other use of, or the exercise of control over, the vehicle, boat or aircraft; and
>       (C) The owner of the vehicle, boat or aircraft did not consent to the taking, operation or other use of, or the exercise of control over, the vehicle, boat or aircraft;
>    (b)(A) The person knowingly rides in another's vehicle, boat or aircraft;

15

(B) The person knows that the owner of the vehicle, boat or aircraft does not consent to the person's riding in the vehicle, boat or aircraft; and

(C) The owner or an authorized user of the vehicle, boat or aircraft did not consent to the person's riding in the vehicle, boat or aircraft;

(c) Having custody of a vehicle, boat or aircraft pursuant to an agreement between the person or another and the owner thereof whereby the person or another is to perform for compensation a specific service for the owner involving the maintenance, repair or use of such vehicle, boat or aircraft, the person intentionally uses or operates it, without consent of the owner, for the person's own purpose in a manner constituting a gross deviation from the agreed purpose; or

(d) Having custody of a vehicle, boat or aircraft pursuant to an agreement with the owner thereof whereby such vehicle, boat or aircraft is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement.

ORS 164.135 (emphasis added). The Washington statute that is most closely analogous is Washington's Taking A Motor Vehicle without Permission in the Second Degree. This statute provides:

A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, *intentionally* takes or drives away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken.

RCW 9A.56.075(1) (emphasis added).

The State acknowledges that the statutes are not legally comparable because the Oregon statute is broader. *State v. Jackson*, 129 Wn. App 95, 107-09, 117 P.3d 1182 (2005). The *mens rea* requirement under the Oregon statute is recklessness because the individual is "aware of and consciously disregards a substantial and unjustifiable risk" that the owner has not consented to the use of the vehicle. *See* ORS § 161.085(9) ("'Recklessly' . . . means that a person is aware of and consciously disregards a substantial and unjustifiable risk."). The *mens rea* requirement under the Washington statute is "intentionally." In Washington, "[a] person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

As part of his deferred disposition for unauthorized use of a vehicle, Mr. Maldonado admitted to "paragraph 1" of the petition from January 22, 2013. Second Evid. at 24. What paragraph 1 is referring to is not entirely clear. However, assuming it was referring to all the allegations included under count one in the petition, the defendant admitted to the following:

> The defendant, on or about January 2, 2013, in Umatilla County, Oregon, did unlawfully and with criminal negligence take, operate, exercise control over, ride in and otherwise use a vehicle, a 2008 Landrover without the consent of the owner, ROSA GLORIA DE DIOS; contrary to statute and against the peace and dignity of the State of Oregon.
>
> The state further alleges that the value of the vehicle was greater than $10,000.

> The state further alleges that the vehicle was a motor vehicle used primarily for personal, rather than commercial, transportation.

Second Evid. at 24. Mr. Maldonado's admission states that he acted with criminal negligence. "Criminal negligence," under Oregon law, "means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists." ORS § 161.085(10). Because Mr. Maldonado only admitted acting with criminal negligence and there are not facts admitted to that would support intentionality, the deferred disposition for unauthorized use of a motor vehicle is not factually similar to the analogous Washington statute. The State relied on the testimony of an officer in the statement for probable cause for custody to establish that the crimes were factually similar. However, as in the above sections, the defendant did not admit to the statement for probable cause, therefore it cannot be relied on to establish factual comparability.

## 2. Prejudice

Having determined that the out-of-state convictions are neither factually or legally comparable to Washington crimes, and thus counsel's performance at the initial sentencing hearing was deficient for failing to object to the use of the out-of-state convictions, we must determine if Mr. Maldonado can show prejudice. *Thiefault*, 160 Wn.2d at 414. The Court in *Strickland* defined prejudice as the "reasonable probability

18

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If an offender score is reduced, the initially miscalculated offender score implicates counsel's performance and constitutes a fundamental defect that entitles Mr. Maldonado to relief. *See In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 933 P.2d 1019 (1997) (miscalculated offender score constitutes fundamental defect that inherently results in complete miscarriage of justice requiring relief in personal restraint proceeding). Even where the length of a defendant's previously-imposed sentence still falls within the bounds of a sentence under the new offender score, the defendant is still entitled to resentencing. *Id.* at 569.

Here, Mr. Maldonado's offender score was incorrectly calculated at two and one-half rounded down to two. None of the Oregon offenses were either legally or factually comparable to Washington offenses. Thus, none of the Oregon offenses should have counted toward the offender score. Without the Oregon offenses, Mr. Maldonado's offender score is zero. Thus, Mr. Maldonado was prejudiced by his attorney's deficient performance.

CONCLUSION

Mr. Maldonado's trial counsel was not ineffective for failing to address whether the deferred dispositions qualify as convictions but was ineffective for failing to object to the comparability of the offenses. Since the Oregon offenses should not have been

19

included in his offender score, we do not need to address whether they counted as the

same criminal conduct for scoring purposes. We remand for a full resentencing where

Mr. Maldonado can raise relevant issues pertaining to mitigating factors.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, A.C.J.