128 P.3d 133 (2006)
STATE of Washington, Respondent and Cross-Appellant,
v.
Steven Lee PAULSON, Appellant and Cross-Respondent.
State of Washington, Respondent and Cross-Appellant,
v.
Troy Lee Loney, Appellant and Cross-Respondent.
Nos. 32382-6-II, 32418-1-II.
Court of Appeals of Washington, Division Two.
February 7, 2006.
*134 Lise Ellner, Attorney at Law, Vashon, WA, Linda J. King, Attorney at Law, Tacoma, WA, for Appellant.
Todd Andrew Campbell, Kathleen Proctor, Pierce Co. Pros. Attorneys Office, Tacoma, WA, for Respondent.
VAN DEREN, A.C.J.
¶ 1 Steven Paulson and Troy Lee Loney appeal their convictions for first degree animal cruelty on the grounds that the trial court lacked sufficient evidence to support the conviction. In addition, Loney appeals the portion of his sentence allowing him up to 24 months to complete an animal cruelty prevention education class and 240 hours of community service under RCW 9.94A.680, with court supervision.[1] Finding no error, we affirm.

FACTS

SUBSTANTIVE FACTS
¶ 2 On March 8, 2004, Anthony Flora, a substitute custodian at Wilkeson Elementary School, spotted Loney and Paulson walking a dog near the school. He watched as they tied the dog to a tree and shot it with an arrow. He then saw Loney shoot two arrows and then hand the bow to Paulson, who stepped back six or eight feet from the dog and shot at it. Flora and the school secretary called the police. After calling, Flora went back outside where he saw Loney, who again had the bow, shoot at the dog. Paulson *135 then pulled the arrow out of the dog and handed it to Loney, who shot the dog again. Flora said he did not hear the dog bark or whimper, and he saw the dog go limp after the first shot.
¶ 3 Wilkeson Deputy Marshal Earl Greene responded to the school. At the scene, Flora identified Loney and Paulson as the men he saw shooting at the dog. When Marshal Greene questioned the two, they said that they had shot arrows at a bale of hay for shooting practice. They denied knowing anything about a dog.
¶ 4 Greene let Loney and Paulson leave but continued to investigate. When he found blood on a tree by the school, he went to Loney's and Paulson's home to further question them. At that point, Loney admitted that he and Paulson had tied the dog to the tree and shot it twice. He told Greene that they needed to put the dog down. Greene also questioned Paulson, who confessed that he and Loney shot the dog but that he did not know how many times they shot it.
¶ 5 Greene testified that at that point he did not know whether a crime had been committed, so he asked Loney and Paulson to fill out written statements. The following day Greene returned to retrieve the statements. He determined that the two had committed a crime, so he administered Miranda[2] warnings and continued to talk to them. But he did not arrest them at that time.
¶ 6 Greene returned to Loney's and Paulson's house for a third time because the initial statements they had written were illegible. He asked them for additional statements, which they agreed to write. Greene read them their Miranda rights again. In Loney's second statement, he admitted to shooting the dog and stated that he shot it once or twice, but could not remember exactly how many times. In his written statement, Paulson also admitted shooting the dog. He admitted that he shot it two to three times and that he threw the dog into the river. The dog's body was never found.

PROCEDURAL FACTS
¶ 7 On March 19, 2004, the State charged Loney and Paulson by information with one count each of first degree animal cruelty, asserting that they acted as accomplices on March 8, 2004, and unlawfully, feloniously, and intentionally inflicted substantial pain to, caused physical injury to, or killed an animal by means causing undue suffering, contrary to RCW 16.52.205(1)(b) and (c).
¶ 8 Loney and Paulson moved to dismiss the charge, claiming that the information was defective because the statute was vague. The court denied the motion, finding the statute was not vague and determining that the word "intent" modified both "kill" and "cause undue suffering," which required the State to prove that Loney and Paulson intended to kill the dog and that they intended to cause it undue suffering.
¶ 9 The court held a CrR 3.5 hearing on the statements Loney and Paulson made before and after they received Miranda warnings from Greene. The court denied their motion to suppress and allowed the State to introduce the statements. Loney and Paulson waived their right to a jury trial.
¶ 10 At trial, Loney testified that the dog, a Siberian Husky, showed up on their front porch about a week and a half before the incident. Paulson's father, their landlord, told them they could not have dogs in the house so Loney paid a friend to take care of the dog he already had. He said that they tried to get rid of the stray dog but they could not find anyone to take it. He and Paulson decided that they needed to put the stray down and decided to shoot it with a bow and arrow. He testified that Paulson shot it once and it went limp but, after Paulson's first shot, Loney was not sure the dog was dead so he shot it a second time. He said that together they only shot it twice and, although he admitted that they retrieved their only two arrows from its body, he denied shooting it multiple times.
¶ 11 The court found Loney and Paulson guilty of first degree animal cruelty, an unranked class C felony, and sentenced them to nine months in jail. The trial court converted *136 30 days' confinement to 240 hours' community service under RCW 9.94A.680 and required, under RCW 16.52.200(6), completion of an animal cruelty prevention program. It allowed them up to 24 months to complete the animal cruelty prevention program and the community service under court supervision. They timely appeal.

ANALYSIS

I. EVIDENCE OF INTENT TO CAUSE UNDUE SUFFERING
¶ 12 Loney and Paulson argue that the trial court lacked sufficient evidence to support their conviction. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Circumstantial evidence and direct evidence are equally reliable. State v. Dejarlais, 88 Wash.App. 297, 305, 944 P.2d 1110 (1997), aff'd, 136 Wash.2d 939, 969 P.2d 90 (1998).
¶ 13 Credibility determinations are for the trier of fact and are not subject to review. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992).
¶ 14 The State must prove all elements of a crime beyond a reasonable doubt. State v. Lively, 130 Wash.2d 1, 11, 921 P.2d 1035 (1996). RCW 16.52.205(1)(c) requires that the State prove that Loney and Paulson acted intentionally to inflict undue suffering and to kill the dog.[3] It is not disputed that Loney and Paulson intentionally killed the dog. But they argue that (1) they did not intentionally cause undue suffering and (2) that they did not cause undue suffering. Their arguments are unpersuasive.
¶ 15 The statute does not define "undue suffering." Thus, this court must give the term its ordinary dictionary meaning. State v. Edwards, 84 Wash.App. 5, 10, 924 P.2d 397 (1996). "Undue" means: "Excessive or unwarranted." BLACK'S LAW DICTIONARY 1563 (8th ed.2004). And "suffer" means: "To experience or sustain physical or emotional pain, distress, or injury." BLACK'S at 1474. Division One of this court has ruled that the phrase "undue suffering" in RCW 16.52.205 is not unconstitutionally vague. State v. Andree, 90 Wash.App. 917, 954 P.2d 346 (1998).
¶ 16 The defendant's acts in Andree are remarkably similar to Loney's and Paulson's. Andree killed a kitten by stabbing it nine times. Andree, 90 Wash.App. at 919, 954 P.2d 346. Andree argued that RCW 16.52.205 was unconstitutionally vague "because the statute does not proscribe due suffering, and because it does not indicate how much suffering would be either excessive or immoderate when causing ... death, a person of common intelligence must guess how much suffering would be unusual when committing one of the proscribed acts." Andree, 90 Wash.App. at 921, 954 P.2d 346.
¶ 17 In rejecting Andree's challenge to the statute, Division One of this court stated:
As the phrase applies only to killing an animal, the question in this case, therefore, is whether a person of ordinary intelligence would understand that killing a kitten by stabbing it nine times with a hunting knife would cause undue suffering. Evaluated in this context, the phrase gives fair notice of an objective standard of reasonableness, which is clearly within a layman's understanding.
Andree, 90 Wash.App. at 921, 954 P.2d 346.
¶ 18 Here, the court heard eyewitness testimony that Loney and Paulson shot the dog *137 multiple times, pulling out the arrows between shots. And Loney testified that they only had two arrows. The trial court determined that Flora's eyewitness testimony that Loney and Paulson repeatedly shot the dog was credible because (1) he had a definite memory of the incident; (2) he was at a reliable vantage point; (3) his view was not blocked and there was sufficient light; and (4) he was not biased against Loney and Paulson. Since decisions of credibility are not subject to review, we abide by the trial court's decision. See e.g. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
¶ 19 When confronting the issue of intent to cause undue suffering in Andree, the court concluded: "[W]hile specific intent cannot be presumed, a [factfinder] may infer Andree intended to cause the kitten undue suffering where his `conduct plainly indicates the requisite intent as a matter of logical probability.'" 90 Wash.App. at 922-23, 954 P.2d 346 (quoting State v. Stearns, 61 Wash.App. 224, 228, 810 P.2d 41 (1991)). Here, as the court found in Andree, the act of tying an animal to a tree and repeatedly shooting arrows into it "`plainly indicates the requisite intent as a matter of logical probability.'" 90 Wash.App. at 923, 954 P.2d 346 (quoting Stearns, 61 Wash.App. at 228, 810 P.2d 41).
¶ 20 It is difficult to imagine that any dog, especially one who had followed Loney and Paulson around for almost two weeks, would not suffer unduly with such a killing scheme. The means show an intent to cause undue suffering because they would not have continued to shoot at it if it had died with the first shot. Furthermore, pulling the arrows out of a living dog to shoot it repeatedly aggravated the suffering. It was certainly within Loney's and Paulson's ability to understand that these repeated actions intentionally inflicted suffering in the course of killing the dog. Thus, the trial court could reasonably conclude that they possessed the requisite intent. See Andree, 90 Wash.App. at 923, 954 P.2d 346.
¶ 21 Interpreting this evidence in a manner most favorable to the State, the record clearly establishes sufficient evidence of Loney's and Paulson's intent to cause undue suffering and their guilt under RCW 16.52.205(1).

II. LONEY'S SENTENCE
¶ 22 A trial court may only impose a statutorily authorized sentence. State v. Phelps, 113 Wash.App. 347, 354-55, 57 P.3d 624 (2002). If the trial court exceeds its sentencing authority, its actions are void. Phelps, 113 Wash.App. at 355, 57 P.3d 624. A defendant cannot extend the trial court's sentencing authority by agreeing to a punishment in excess of the statute. Phelps, 113 Wash.App. at 355, 57 P.3d 624. "A sentence imposed without statutory authority can be addressed for the first time on appeal, and this court has both the power and the duty to grant relief when necessary." State v. Julian, 102 Wash.App. 296, 304, 9 P.3d 851 (2000).
¶ 23 Statutory construction is a question of law that we review de novo under the error of law standard. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003). Courts retain the ultimate authority to interpret a statute but courts must also give effect to the legislative intent. Wentz, 149 Wash.2d at 346, 68 P.3d 282. Where a statute is unambiguous, we determine the legislative intent from the language of the statute alone. Wentz, 149 Wash.2d at 346, 68 P.3d 282.
¶ 24 Neither Loney nor Paulson challenge the trial court's sentence requiring completion of an animal cruelty prevention education program under RCW 16.52.200(6).[4] Loney argues for the first time on appeal that the trial court violated the Sentencing Reform Act, specifically RCW 9.94A.505(2)(b), by granting him up to 24 months to complete the animal cruelty prevention program and 240 hours of community service under RCW 9.94A.680. He argues that RCW 9.94A.505(2)(b) limits to one year *138 the time the court can sentence him to community custody.[5] The State counters that, although Loney correctly cites RCW 9.94A.505(2)(b), he misperceives the trial court's sentence and the trial court did not exceed its authority when it relied on RCW 9.94A.680 and RCW 16.52.200 to sentence Loney for violating RCW 16.52.205(1).
¶ 25 Chapter 9.94A RCW governs felony sentencing in Washington. RCW 9.94A.505(1) states: "When a person is convicted of a felony, the court shall impose punishment as provided in this chapter." And under RCW 9.94A.505(2)(b), for crimes without a standard sentencing range: "[T]he court shall impose a determinate sentence which may include not more than one year of confinement; ... and on and after July 1, 2000, a term of community custody not to exceed one year."
¶ 26 But the trial court did not sentence Loney to community custody under RCW 9.94A.505. Rather, it sentenced Loney under RCW 16.52.200(6), the specific statute addressing an animal cruelty conviction, and converted 30 days of confinement to community service under RCW 9.94A.680. The court imposed a maximum of 24 months' court supervision as an alternative to confinement in order to give Loney enough time to complete his animal cruelty prevention program and 240 hours of community service following his release from jail.
¶ 27 RCW 9.94A.680 specifically provides for alternatives to confinement, which the trial court relied on in converting 30 days' confinement to 240 hours of community service. RCW 9.94A.680(2) authorizes the court to impose community restitution that must be completed in not more than 24 months. Therefore, it was not error for the trial court to give Loney up to 24 months to complete the animal cruelty prevention program and his community service hours. Furthermore, it is clear from the face of the judgment and sentence that the court supervision portion of the sentence will be satisfied when Loney completes and presents evidence that he has completed both the community service and the animal cruelty prevention program.
¶ 28 Loney also argues that RCW 16.52.200(6) only applies to misdemeanors and gross misdemeanors and therefore does not apply to his class C felony conviction for animal cruelty. The State counters that RCW 16.52.200 grants the court the power to require all defendants, whether convicted of a misdemeanor, gross misdemeanor, or class C felony under chapter 16.52 RCW, to complete an animal cruelty program. We agree with the State. Under the statute, the court may impose participation in an animal cruelty prevention course for any conviction under chapter 16.52 RCW, including class C felonies for animal cruelty.
¶ 29 Thus, the trial court did not exceed its authority when it first sentenced Loney to incarceration (nine months), then converted the maximum allowable amount of that time to community service (30 days of incarceration converted to 240 hours' community service), and ordered the completion of an animal cruelty prevention program, with the latter two parts of the sentence to be completed within 24 months of release from jail. The trial court also did not err when it indicated that it will discharge Loney from court supervision when he presents evidence that he has followed through with his education and community service requirements. Former RCW 9.94A.637(1)(a) (2003).
¶ 30 Accordingly, we affirm.
We concur: HOUGHTON and HUNT, JJ.
NOTES
[1] Court supervision allows the sentencing judge to monitor compliance and progress by scheduling review hearings. No agency is involved in this type of supervision.
[2] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The State initially cross-appealed the trial court's ruling requiring the State to prove that Loney and Paulson intended to kill the dog and intended to use means that would cause undue suffering. The State subsequently withdrew its cross-appeal. Thus, we evaluate the sufficiency argument for reasonable inferences from the State's evidence that Loney and Paulson intended to kill the dog and intended to cause it undue suffering.
[4] RCW 16.52.200(6) states:

As a condition of the sentence imposed under this chapter or RCW 9.08.070 through 9.08.078, the court may also order the defendant to participate in an available animal cruelty prevention or education program or obtain available psychological counseling to treat mental health problems contributing to the violation's commission. The defendant shall bear the costs of the program or treatment.
[5] The term referring to that portion of a sentence following total confinement has changed over time from "community restitution" to "community supervision" to "community custody," which was the appropriate term when Loney and Paulson were sentenced. RCW 9.94A.505(2)(b).