# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48523-1-II |
| Respondent, | |
| v. | |
| BENJAMIN JOSEPH HAMEL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Benjamin Joseph Hamel appeals his conviction and sentence for assault in the third degree. As to trial issues, Hamel argues that the trial court violated his right to confrontation by prohibiting him from impeaching an officer with a specific instance of misconduct under ER 608(b). He also argues that the prosecutor committed misconduct and the trial court gave an improper reasonable doubt jury instruction. As to sentencing issues, Hamel argues that the trial court erred by requiring him to complete a substance abuse evaluation and by including an out-of-state conviction in his offender score. Lastly, Hamel argues that we should decline to impose appellate costs because he is indigent. The State represents it will not ask for appellate costs. We affirm, but remand to strike the substance abuse evaluation requirement from Hamel's judgment and sentence.

FACTS

I.    THE INCIDENT

On the evening of August 19, 2015, Bremerton Police Officer Spencer Berntsen responded to a call of a man threatening people at a nearby store.  Berntsen observed Hamel and another man walking in front of the store.  Although Hamel matched the description of the man, and he was near the store, Berntsen wanted to be certain before contacting him.

Berntsen spoke with store security, walked back to his car, and drove by Hamel and the other man.  Berntsen parked his car in a nearby parking lot to allow the men to walk in his direction.  As they approached, Berntsen exited his vehicle and asked to speak to them.  Berntsen said, "Gentlemen, I need to talk to you."  Report of Proceedings (RP) at 52.  Hamel responded in an agitated manner, "Gentlemen who?"  RP at 52.  As Hamel began to walk past Berntsen, he grabbed Hamel's arm and told Hamel he was not free to leave.  Berntsen escorted Hamel towards his patrol vehicle.  Hamel told Berntsen to "let go of him or he's going to go off on [Berntsen]."  RP at 54.

Berntsen positioned Hamel with his back against the trunk of the patrol vehicle, and he repeatedly told Hamel to put his hands on the trunk.  Berntsen told Hamel that he wanted to put him in handcuffs.  Then, Hamel either pushed off the car or off of Berntsen, who went backwards.  Berntsen pulled out his Taser and pointed it at Hamel but did not deploy it.  Berntsen radioed for backup.

Hamel actively resisted Berntsen's efforts to handcuff him.  He displayed agitation, hostility and noncompliance.  Berntsen managed to get Hamel onto the ground, with Hamel on his back and Berntsen on top of Hamel.  Feeling uncomfortable, Berntsen got off Hamel and waited for backup to arrive.  Berntsen told Hamel to stay on the ground, but after initially complying, Hamel began to stand up.  As Berntsen approached Hamel to keep him on the ground, Hamel said,

"Let's do this." RP at 60-61. Hamel kicked Berntsen with both of his feet. In response, Berntsen deployed his Taser. Officer Joseph Corey arrived and placed Hamel in handcuffs. Berntsen did not sustain any injuries.

Additional testimony at trial from witnesses who observed the incident supported Berntsen's account. Matthew Pebley observed Berntsen back away from Hamel, and heard Hamel say, "It's on now," or something similar. RP at 85-86. According to Pebley, Hamel kicked Berntsen upwards of 20 times with both feet. Kenneth Maples also witnessed the incident, but he did not see Hamel kick Berntsen. Michael Nelson observed Hamel kick Berntsen.

The State charged Hamel by amended information with assault in the third degree.[1]

II.     PRETRIAL MOTION

The State moved in limine to prohibit any reference to a specific instance of conduct by Berntsen, i.e. his "30-day suspension in 2009 for untruthfulness and insubordination." Clerk's Papers (CP) at 4. The State stated that Berntsen conducted a traffic stop, but he chose to let the suspended driver go. When questioned by a sergeant about the status of the driver, "Berntsen misrepresented that the driver of the vehicle was not the registered owner and he had a valid driver's license so he let him go." CP at 6. Berntsen received a suspension for this action.

Hamel argued that this conduct should be admitted under ER 608(b) because it and the accompanying suspension went to Berntsen's veracity as an officer, which a jury could consider in determining credibility.

The trial court found that there was some probative value to Berntsen's suspension, but it did not allow Hamel to cross-examine Berntsen on the issue. The trial court reasoned that the incident was both remote in time, and the prejudicial effect outweighed any probative value.

---

[1] RCW 9A.36.031.

III.    REASONABLE DOUBT JURY INSTRUCTION

The trial court instructed the jury on reasonable doubt:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 22 (Instr. 3). Hamel did not object to this instruction.

IV.    PROSECUTOR'S CLOSING ARGUMENT

In rebuttal closing argument, the prosecutor stated, "You have your instruction on beyond a reasonable doubt, and that's an abiding belief in the truth of the charge. That's Instruction No. 3. In your gut, do you believe that a crime was committed." RP at 166. Hamel did not object.

V.    VERDICT AND SENTENCING

The jury found Hamel guilty of assault in the third degree. The trial court sentenced Hamel to 36 months of confinement and 12 months of community custody. In calculating Hamel's offender score, the trial court included one point for a conviction from Arizona, leaving the scene of an injury accident, because it found that the conviction was comparable to a Washington felony. The State submitted documentation of the judgment and sentence of the Arizona conviction for leaving the scene of an injury accident, a felony.[2] The trial court also ordered Hamel to complete a substance abuse evaluation as part of his sentence. Hamel appeals.

---

[2] Ariz. Rev. Stat. Ann. §§ 28-663, 28-661.

4

ANALYSIS

I.     ER 608(B) EVIDENCE

Hamel argues that the trial court violated his right to confront a witness by prohibiting Hamel from cross-examining Berntsen about his suspension and the facts surrounding it. We disagree.

A.     LEGAL PRINCIPLES

Both the United States Constitution and the Washington State Constitution guarantee criminal defendants the right to confront and cross-examine witnesses. U.S. CONST. amend. VI; WASH. CONST. art. 1, § 22. The primary and most important component is the right to conduct a meaningful cross-examination. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). "The purpose is to test the perception, memory, and credibility of witnesses." *Darden*, 145 Wn.2d at 620. Accordingly, the right to confrontation must be zealously guarded. *Darden*, 145 Wn.2d at 620.

Yet, the right is not absolute. *State v. O'Connor*, 155 Wn.2d 335, 349, 119 P.3d 806 (2005). "Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative." *Darden*, 145 Wn.2d at 620-21. "The confrontation right and associated cross-examination are limited by general considerations of relevance." *Darden*, 145 Wn.2d at 621.

ER 608(b) provides that specific instances of a witness's conduct, introduced for the purpose of attacking his or her credibility, may not be proved by extrinsic evidence, but may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness." "The instances must be probative of truthfulness and not remote in time; further,

the court should apply the overriding protection of ER 403 (excluding evidence if its probative value is outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury)." *State v. Wilson*, 60 Wn. App. 887, 893, 808 P.2d 754 (1991).

We review a trial court's denial of cross-examination under ER 608(b) for an abuse of discretion. *State v. McSorley*, 128 Wn. App. 598, 611, 116 P.3d 431 (2005). A court abuses its discretion if its decision is based on untenable grounds or reasons or is manifestly unreasonable. *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003). In exercising its discretion, the court must consider that "'[i]t is well established that a criminal defendant is given extra latitude in cross-examination to show . . . credibility, especially when the particular prosecution witness is essential to the State's case. Any fact which goes to the trustworthiness of the witness may be elicited if it is germane to the issue.'" *McSorley*, 128 Wn. App. at 612-13 (quoting *State v. York*, 28 Wn. App. 33, 36-37, 621 P.2d 784 (1980)). The Washington Supreme Court has reasoned that "[f]ailing to allow cross-examination of a state's witness under ER 608(b) is an abuse of discretion if the witness is crucial and the alleged misconduct constitutes the only available impeachment." *State v. Clark*, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001).

B.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

"The need for cross-examination on misconduct diminishes with the significance of the witness in the state's case." *Clark*, 143 Wn.2d at 766. In *McSorley*, the witness was "essential to the State's case" because "he was the only State's witness with direct knowledge of the charged event." 128 Wn. App. at 613. Here, multiple people observed Hamel assault Berntsen and corroborated his testimony. Support for the assault did not rely solely on Berntsen and his testimony.

6

Berntsen's suspension went to his veracity, a factor a jury would want to consider. Berntsen's testimony, although important to the case, was not necessarily "crucial" to it. Other witnesses corroborated Hamel's testimony that an assault occurred. Although the witnesses had discrepancies in their testimony as to how many times Hamel kicked Berntsen, all testified Hamel kicked Berntsen.

In addition, in excluding the evidence, the trial court stated that its prejudicial effect outweighed its probative value.[3]

We conclude that the trial court did not abuse its discretion in excluding this evidence of Berntsen's prior conduct. Further, the trial court did not violate Hamel's right to confrontation.

II.    PROSECUTORIAL MISCONDUCT

Hamel argues that the prosecutor committed misconduct by mischaracterizing the State's burden of proof in closing argument. We disagree.

A.    STANDARD OF REVIEW

An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). To establish prejudice, the appellant must then show that the improper comments had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760.

"In the context of closing arguments, the prosecuting attorney has 'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006), overruled on other grounds by *State v. W.R.*, 181

---

[3] The trial court also excluded the evidence based on its remoteness in time. Hamel does not address this ruling in his appeal, nor do we.

Wn.2d 757, 336 P.3d 1134 (2014)). We review the prosecutor's comments during closing argument in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Sakellis*, 164 Wn. App. 170, 185, 269 P.3d 1029 (2011).

But when the defendant failed to object to the improper comments at trial, the defendant must also show that the comments were "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. The appellant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 761-62.

B.     NO PROSECUTORIAL MISCONDUCT

A prosecutor's arguments constitute misconduct if they "shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt." *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). Here, in discussing the reasonable doubt jury instruction in rebuttal, the prosecutor stated: "You have your instruction on beyond a reasonable doubt, and that's an abiding belief in the truth of the charge. That's Instruction No. 3. In your gut, do you believe that a crime was committed." RP at 166. Hamel did not object to this statement.

In *State v. Curtiss*, 161 Wn. App. 673, 250 P.3d 496 (2011), we rejected the argument that a similar comment amounted to misconduct. There, the prosecutor stated during rebuttal closing argument, "Consider all the evidence as a whole. Do you know in your gut—do you know in your heart that [the defendant] is guilty as an accomplice to murder? The answer is yes." *Curtiss*, 161 Wn. App. at 701 (internal quotations omitted). The court reasoned that "the State's gut and heart

8

rebuttal arguments in this case were arguably overly simplistic but not misconduct." *Curtiss*, 161 Wn. App. at 702.[4] Accordingly, we conclude that the prosecutor's statement was not improper and does not amount to misconduct.

In *Curtiss*, and here, the trial court specifically instructed the jury to reach a decision "based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict." 161 Wn. App. at 702. Because we presume that the jury follows the court's instructions, *Curtiss*, 161 Wn. App. at 700, Hamel also fails to show how the prosecutor's statement prejudiced him.

We conclude that the prosecutor did not commit misconduct in rebuttal closing argument.

III.    REASONABLE DOUBT JURY INSTRUCTION

Hamel argues that the trial court's jury instruction on reasonable doubt violated his Fourteenth Amendment right to due process because it improperly focused the jury to search for the truth. We disagree.

We have repeatedly rejected the argument Hamel makes and we do so again. *State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270 (2016). The trial court did not err by instructing the jury on reasonable doubt.

IV.    SUBSTANCE ABUSE EVALUATION SENTENCING CONDITION

Hamel argues that the trial court exceeded its authority by ordering him to undergo a drug and alcohol evaluation because no evidence existed that the crime involved drugs or alcohol. The State concedes this issue. We agree and remand for the trial court to strike the condition.

---

[4] We agree that this argument is overly simplistic and prosecutors should be extremely judicious and cautious in their use of it.

A trial court may only impose a statutorily authorized sentence. *State v. Paulson*, 131 Wn. App. 579, 588, 128 P.3d 133 (2006). Any action by the trial court that exceeds its authority is void. *Paulson*, 131 Wn. App. at 588.

Statutory construction is a question of law that this court reviews de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). We must give effect to the legislative intent behind the statute. *Paulson*, 131 Wn. App. at 589. Where a statute is unambiguous, we determine the legislative intent from the plain language of the statute. *Paulson*, 131 Wn. App. at 589.

We review whether a community custody prohibition is crime-related for abuse of discretion. *State v. Autrey,* 136 Wn. App. 460, 466, 150 P.3d 580 (2006).

RCW 9.94A.703(3)(f) controls here. It provides that conditions imposing prohibitions must be crime-related. RCW 9.94A.703(3)(f); RCW 9.94A.030(10). "A 'crime-related prohibition' is an order prohibiting conduct that *directly relates to the circumstances of the crime.*" *Autrey*, 136 Wn. App. at 466 (emphasis added). The trial court's imposition of other discretionary conditions, such as participating in rehabilitative programs or crime-related treatment or counseling, must also be related to the crime itself. *State v. Munoz-Rivera*, 190 Wn. App. 870, 893, 361 P.3d 182 (2015); RCW 9.94A.703(3)(c), (d).

There is no evidence in the record that Hamel used drugs or alcohol in the commission of the assault, nor did the trial court make a finding that substance abuse contributed to the crime. Therefore, this condition must be stricken.

V.    OFFENDER SCORE CALCULATION

Hamel argues that the trial court erred by adding a point to his offender score for his conviction of leaving the scene of an injury accident in Arizona because it is not legally comparable to a Washington crime. We disagree.

10

A.     STANDARD OF REVIEW

We conduct de novo review of a sentencing court's decision to consider a prior conviction as a point. *State v. Ortega*, 120 Wn. App. 165, 171, 84 P.3d 935 (2004), *review granted in part and remanded*, 154 Wn.2d 1031, 119 P.3d 852 (2005).

There is a two-part test to determine the comparability of a foreign offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). We must first address whether the foreign offense is legally comparable, or "whether the elements of the foreign offense are substantially similar to the elements of the Washington offense." *Thiefault*, 160 Wn.2d at 415. Secondly, "[i]f the elements of the foreign offense are broader than the Washington counterpart, the . . . court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute." *Thiefault*, 160 Wn.2d at 415. "In making its factual comparison, the . . . court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." *Thiefault*, 160 Wn.2d at 415. If the court determines that the "prior, foreign conviction is neither legally nor factually comparable, it may not count the conviction." *Thiefault*, 160 Wn.2d at 415.

Statutory interpretation is a question of law that we review de novo. *State v. Watson*, 146 Wn.2d 947, 954, 53 P.3d 1 (2002). An unambiguous statute is not subject to judicial construction and our Supreme Court has declined to insert words into a statute where the language, taken as a whole, is clear and unambiguous. *Watson*, 146 Wn.2d at 955. In interpreting statutory provisions, the primary objective is to ascertain and give effect to the intent and purpose of the legislature in creating the statute. *Watson*, 146 Wn.2d at 954. We discern "legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and

11

the statutory scheme as a whole." *Fast v. Kennewick Pub. Hosp. Dist*., 187 Wn.2d 27, 33, 384 P.3d 232 (2016). We initially look to the language of the statute; if a statute is "clear on its face, its meaning is to be derived from the plain language of the statute alone." *Watson*, 146 Wn.2d at 954. A statute is unclear if it can be reasonably interpreted in more than one way, but it is not ambiguous simply because different interpretations are conceivable. *Watson*, 146 Wn.2d at 954-55.

B.     THE TRIAL COURT DID NOT ERR BY ADDING A POINT TO THE OFFENDER SCORE

Hamel does not argue that the entire Arizona statute is broader than the Washington statute. He only contends that the term "registration number of the vehicle" used in the Arizona statute is a broader term than a "vehicle license number" used in the Washington statute.

First, we determine whether the statutes are legally comparable. *Thiefault*, 160 Wn.2d at 415. Both statutes criminalize a driver leaving the scene of an injury accident without providing specific information to the other driver. Ariz. Rev. Stat. Ann. 28-661; Ariz. Rev. Stat. Ann. 28-663; RCW 46.52.020(3), (4)(b).[5] Both statutes require that the driver provide specific information to the other driver. Ariz. Rev. Stat. Ann. 28-663; RCW 46.52.020(3).

Other Arizona statutes provide context for understanding the term "vehicle registration number." Ariz. Rev. Stat. Ann. 28-2484(B) states: "The registration numbers and special license plates assigned to the historic vehicles shall be manufactured from Arizona copper and shall run in separate unique numerical series." Ariz. Rev. Stat. Ann. 28-2531(A)(3) criminalizes knowingly issuing a license plate without payment of the full amount of the registration amount. This

---

[5] Ariz. Rev. Stat. Ann. 28-661 together with Ariz. Rev. Stat. Ann. 28-663, Ariz. Rev. Stat. Ann. 28-2484, and Ariz. Rev. Stat. Ann. 28-2531 have been amended since Hamel's Arizona conviction. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before the statutes.

language implies that the registration fee is in exchange for the vehicle registration number, or the license plate. The terms are seemingly interchangeable.

Washington statutes also provide context as to the meaning of the term "vehicle license number." RCW 46.16A.200(4)(a)(i) states that "[t]he director shall furnish to all persons making satisfactory application for a vehicle registration: Two identical license plates each containing the license plate number." The implication of this statute is that once one registers a vehicle, the State provides the person license plates with a vehicle license number on them. In addition, RCW 46.04.462 defines registration as "the registration certificate or license plates issued under the laws of this state pertaining to the registration of vehicles." This statute also implies that a vehicle's registration and its license number are interchangeable.

Both statutes contain unambiguous language. A vehicle registration number and a vehicle license number have the same meaning. The term "vehicle registration number" is not specifically defined by Ariz. Rev. Stat. Ann. 28-663, nor is "vehicle license number" defined by RCW 46.52.020. However, the plain language of the terms show that they are interchangeable because both a "vehicle registration number" and a "vehicle license number" refer to the number the state provides in exchange for when one registers the vehicle. The State provides a license plate when one registers a vehicle, meaning the plain language of both terms imply that they refer to the license plate number. Because the terms "vehicle registration number" and "vehicle license number" have the same meaning, the statutes are legally comparable.

Even though we conclude that the two statutes in question are legally comparable, and even though Hamel does not argue this prong, we still consider whether the crime committed in Arizona is factually comparable to our Washington crime. *Thiefault*, 160 Wn.2d at 415. "Factual comparability requires the sentencing court to determine whether the defendant's conduct, as

13

evidenced by the indictment or information, or the records of the foreign conviction, would have violated the comparable Washington statute." *State v. Farnsworth*, 133 Wn. App. 1, 18, 130 P.3d 389 (2006) (internal citations omitted).

In the present case, the trial court reviewed the complaint that charged Hamel in Arizona and a statement of probable cause. The complaint stated that on June 13, 2003, Hamel "operated a vehicle that caused an accident resulting in a serious injury [to three people] and failed or refused to remain at the scene and failed to fulfill the requirements of A.R.S. 28-663, in violation of A.R.S. 28-661." CP at 139-40. The statement for probable cause stated that on June 13, 2003, "Hamel was involved in a two-vehicle injury collision. . . . Hamel fled the scene on foot prior to [the officer's] arrival. Two of the three victims identified Hamel as the driver that fled the scene from a photographic lineup." CP at 143. Hamel pleaded guilty to this charge.

Because Hamel drove a vehicle that caused injuries to three people, did not remain at the accident scene, and did not provide any information to those in the other vehicle, his actions also violated the Washington statute. RCW 46.52.020(3), (4)(b).

We therefore conclude that the trial court did not err by adding a point to Hamel's offender score.

VI.    APPELLATE COSTS

Hamel argues that if the State substantially prevails on appeal and makes a request for costs, this court should decline to impose costs because he is indigent. The State stated that it would not seek appellate costs. Because the State has represented that it would not seek appellate costs, we decline to order them.

We affirm, but remand to strike the substance abuse evaluation requirement from Hamel's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, J.

_____
Bjorgen, C.J.