IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>HAKIM I. FAREED,<br><br>               Appellant. | No. 83480-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — Hakim Fareed was convicted of multiple sex offenses against his nephew and one of his children after entry of a guilty plea. At sentencing, the court imposed sexual assault protection orders for a period of 100 years for the named victims and post-conviction conditions of no contact for a period of ten years. As conditions of community custody, the court also authorized several provisions prohibiting contact with minors, which necessarily impact his constitutional right to parent, but failed to conduct a balancing inquiry on the record or narrowly tailor those restrictions. The State concedes error and we remand for correction.

FACTS

Hakim Fareed has four adoptive children: Z, R, J, and T. Fareed is related to, but not a parent of, I.M. On July 7, 2021, Fareed entered a guilty plea to amended charges of three counts of child molestation in the second degree against I.M., one count of child molestation in the second degree against R, and

one count each of communication with a minor for immoral purposes against I.M. and R. Based on his offender score, Fareed's standard range sentence on the four counts of child molestation was 87-116 months in prison. As part of the plea agreement, the parties agreed to jointly recommend lifetime sexual assault protection orders (SAPO)[1] for both victims, I.M. and R, and a no-contact order (NCO) for Z, who was listed as a State's witness for trial.[2]

The court conducted the sentencing hearing on November 5, 2021. Fareed sought a low end sentence of 87 months. The State recommended a sentence of 116 months on each molestation count, to run concurrently to each other, followed by 36 months of community custody supervision. The State also requested that the court follow the parties' agreed recommendation and impose lifetime SAPOs for I.M. and R, and to issue an NCO for Z. Though Fareed acknowledged the agreement, he noted that the trial court was still required to make its own findings that justified the orders and conditions as they implicated his fundamental right to parent.

For the four felony counts of child molestation, the trial court imposed a sentence of 104 months confinement followed by 16 months of community custody. In the judgment and sentence (J&S) for the felonies, the trial court ordered that Fareed was prohibited from contact with I.M., R, and Z, specifically, but also unsupervised contact with any minor, for a period of ten years. "Appendix

---

[1] Pursuant to statutory amendment, these orders are now designated as "sexual assault no-contact orders." RCW 9A.44.210. However, because the parties, and the statute in effect at the time of Fareed's sentencing, used "sexual assault protection orders," we use that terminology here.

[2] Z ultimately did not testify.

H" to the felony J&S contained the conditions of community custody. These include various conditions which forbid Fareed from having direct or indirect contact with minors, holding a position of authority or trust involving minors, and going into areas where children's activities regularly occur or are occurring.

For each of the misdemeanor counts, the trial court imposed 364 days of confinement, to run consecutively with the felony sentence, but suspended the term of confinement on the condition that Fareed fulfill two years of probation. Pursuant to the misdemeanor J&S, the trial court imposed an NCO that prohibited Fareed from any contact with Z and unsupervised contact with minors, and required him to follow the conditions imposed in Appendix H of the felony J&S.

Finally, the trial court issued two post-conviction SAPOs prohibiting Fareed from having any contact with R and I.M. until November 5, 2121. Fareed timely appealed.

ANALYSIS

I.     Statutory Limitations on the Duration of SAPOs

Fareed first assigns error to the trial court's 100-year SAPOs for I.M. and R. Fareed avers the duration of each SAPO exceeds the statutory maximum and seeks remand to the trial court for the imposition of a lawful term. The State appropriately concedes error and agrees that remand for corrective measures is required.

"A trial court may only impose a statutorily authorized sentence." State v. Paulson, 131 Wn. App. 579, 588, 128 P.3d 133 (2006). If a trial court "exceeds its sentencing authority" under the statute, "its actions are void." Id. at 588. Further,

"a defendant cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute." In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 872, 50 P.3d 618 (2002). Whether an individual's sentence exceeds statutory authority is a question of law subject to de novo review. State v. Button, 184 Wn. App. 442, 446, 339 P.3d 182 (2014). Further, to determine whether the length of a SAPO was correctly calculated, this court engages in de novo review. State v. Navarro, 188 Wn. App. 550, 553, 354 P.3d 22 (2015). Both aspects of this panel's consideration of these questions necessarily require statutory interpretation.

When an individual is found guilty of a sex offense and a condition of the sentence restricts that individual's ability to have contact with the victim, the condition was previously referred to as a "SAPO." Former RCW 7.90.150.[3] A final SAPO "entered in conjunction with a criminal prosecution shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole." RCW 9A.44.210(6)(c).[4] As this court has previously explained, the statute's "plain language directs that protection orders entered in conjunction with a criminal prosecution will remain in effect for two years following any sentence the court actually imposes in that proceeding." Navarro, 188 Wn. App. at 555. Accordingly, "all sexual assault protection orders entered against a defendant in

---

[3] Former RCW 7.90.150 was recodified as RCW 9A.44.210 in 2021.
[4] Former RCW 7.90.150(6)(c) was recodified as RCW 9A.44.210(6)(c) in 2021 — the only difference is the previously mentioned change in terminology from "sexual assault protection order" to "sexual assault no-contact order."

one criminal prosecution expire two years after the expiration of the longest sentence." Id. at 552.

Fareed was convicted of four counts of child molestation in the second degree and two counts of communicating with a minor for immoral purposes. The molestation counts are class B felonies that carry a maximum term of incarceration of 10 years. The other two counts are gross misdemeanors with a maximum jail term of 364 days. Again, the trial court imposed 104 months imprisonment followed by 16 months of community custody for the felonies. For the misdemeanors, the court imposed 364 days in jail, suspended on condition of the completion of 24 months of probation, ordered consecutively to the felony sentence. Accordingly, Fareed's sentence of prison time (104 months), community custody (16 months), and misdemeanor probation (24 months) extends for a total of 144 months or 12 years.

The trial court imposed two SAPOs with expiration dates 100 years from the date of the sentencing hearing. As SAPOs must expire within two years of the conclusion of the sentence, incarceration and subsequent period of supervision, and the orders at issue here extend over 85 years beyond that, the trial court clearly exceeded its statutory authority. The SAPOs imposed against Fareed are void. See Paulson, 131 Wn. App. at 588.

Both parties correctly note that the case should be remanded to the trial court for corrective measures. In Navarro, we provided guidance which should be followed on remand here:

> Because an offender's actual release date is unknowable at the time
> of sentencing, a sexual assault protection order should not provide a

fixed expiration date. A preferable approach is simply to track the language of the statute by stating, for example, that the order "shall remain in effect for a period of two years following the expiration" of the longest sentence served by the offender as a result of the prosecution.

188 Wn. App. at 555-56 (quoting former RCW 7.90.150(6)(c) (2006)).

II.    Community Custody Conditions and the Fundamental Right to Parent

Fareed's remaining assignments of error focus on the trial court's NCOs and various conditions contained in both the felony and misdemeanor J&S.[5] According to Fareed, the orders prohibiting contact with his children are erroneous, as the trial court failed to properly consider his fundamental right to parent. The State concedes the trial court erred in failing to conduct the required analysis and agrees with Fareed that remand is proper.

Generally, this court reviews sentencing conditions under an abuse of discretion standard. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "Abuse of discretion occurs when the decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." State v. Ancira, 107 Wash. App. 650, 653, 27 P.3d 1246 (2001). A trial court abuses its discretion if it applies the wrong legal standard while imposing a crime-related prohibition. Rainey, 168 Wn.2d at 375.

The right to the care, custody, and companionship of one's children is a fundamental constitutional right, and the state's interference with this right is subject to strict scrutiny. State v. Warren, 165 Wn.2d 17, 34, 195 P.3d 940 (2008).

_____

[5] Fareed also seeks a directive for the trial court to consider racial bias on remand, but because he fails to assign error at sentencing based on bias or otherwise assert that he was prejudiced by such bias, we decline to reach that issue.

When sentencing conditions restrict a fundamental constitutional right, they must be "'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State.'" Rainey, 168 Wn.2d at 374 (quoting Warren, 165 Wn.2d at 32). As preventing harm to children constitutes a compelling state interest, "[t]he fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children." Ancira, 107 Wn. App. at 654. To survive constitutional scrutiny, the restrictive conditions "must be narrowly drawn" and there "must be no reasonable alternative way to achieve the State's interest." Warren, 165 Wn.2d at 34-35. Trial courts are required to conduct this inquiry on the record. State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020).

In DeLeon, Division Two of this court addressed whether the trial court erred in entering a broad sentencing condition that prohibited DeLeon from contacting his three children. 11 Wn. App. 2d 837. DeLeon married a woman who had three minor children from a previous marriage, and they had three more children together. Id. at 839. DeLeon entered guilty pleas to charges of rape of a child and child molestation against his stepchildren. Id. The trial court imposed a sentencing condition forbidding DeLeon from having contact with all minors, including his biological children. Id. In imposing the condition, the trial court merely asserted it was doing so because DeLeon was a "danger . . . to society." Id.

On review, this court noted that the record contained no acknowledgment of the impact that the order would have on DeLeon's constitutional right to parent, no discussion of whether the prohibition was reasonably necessary to protect

DeLeon's children, and no examination into whether any potentially less restrictive alternatives were available. Id. at 841. As trial courts "must conduct the above analysis on the record," this court remanded the case to the trial court to do so. Id. at 842.

The trial court's various sentencing conditions here, including the NCOs, limited Fareed's constitutional right to parent all four of his children, Z, R, J, and T. Under the felony J&S, the trial court imposed 10-year NCOs for Z and R and prohibited contact with "[a]ny minors without supervision," which encompasses his other children, T and J.

The trial court's only inquiry regarding the constitutional right to parent came from the NCOs for R and Z:

> So Mr. Fareed is the parent of both [R], who is a victim in the charged counts, and [Z], who is a witness.
>
> Starting first with [R], I conclude that that no contact order is appropriate. Mr. Fareed adopted [R] out of foster care. Now [R], because of [R]'s age, started as an especially vulnerable victim, and then as somebody coming out of foster care was that much more vulnerable. And given [R]'s vulnerability and the acts that Mr. Fareed committed against [R], I conclude that the no contact order is reasonably necessary to protect [R] in that no lesser restriction would adequately address that protection.
>
> Similarly with [Z], [Z] was also adopted out of foster care. And given [Z]'s youth, [Z] was particularly vulnerable as to [Z]'s mental health. And as someone coming out of foster care, was that much more vulnerable. [Z] had to then be a witness to [their] siblings' experiences as a victim at the hands of their — their father, their adoptive father. Given this, I conclude that the NCO is reasonably necessary to protect [Z], and no lesser restriction will protect [Z].

Although the trial court's analysis on the record here went beyond that provided by the trial court in DeLeon, it is still clearly insufficient to satisfy strict scrutiny as T and J are not even mentioned. DeLeon, 11 Wn.2d at 841-42.

Trial courts must "narrowly tailor the order, both in terms of scope and duration." State v. Torres, 198 Wn. App. 685, 690, 393 P.3d 894 (2017). Rather than engaging in the appropriate inquiry on the record to justify the 10-year NCOs at issue, the trial court simply concluded that they were necessary to protect the children who were vulnerable. With regard to less restrictive alternatives, the trial court merely asserted that there were none. Accordingly, the record is silent as to the degree to which the court considered limited forms of communication, or adjustments to the limitations as the children age or other means of tailoring the limitation on contact. Case law establishes that the remedy is remand for the trial court to perform the required inquiry on the record. DeLeon, 11 Wn. App. 2d at 842. On remand, the court shall also consider whether the scope of the NCOs should change over time and whether the ultimate duration of the NCOs remains appropriate. Torres, 198 Wn. App. at 690.

Pursuant to the conditions of community custody in Appendix H, Fareed was also prohibited from having any direct or indirect contact with minors (including Z, R, J, and T), holding a position of authority or trust involving minors, and staying in areas where children's activities regularly occur. As part of the misdemeanor J&S, the trial court ordered that Fareed have no contact with Z,[6] based on the State

---

[6] Fareed further argues the trial court erred in imposing the NCO condition expressly prohibiting contact with Z in the misdemeanor J&S because it was not crime related. Appellant's Br. at 33-38. Under RCW 3.66.068, trial courts have "continuing jurisdiction and authority to defer the execution of all or any part of its sentence upon stated terms." For misdemeanor convictions,

naming the child as a witness, that he have no unsupervised contact with minors, and that he comply with the conditions in Appendix H. These conditions also limit Fareed's right to parent, and on remand, the trial court must engage in the proper inquiry on the record wherever a prohibition restricts Fareed's contact with any of his children, Z, R, J, and T.

Reversed and remanded.

WE CONCUR:

Díaz, J.

Birk, J.

---

trial courts may impose "conditions that bear a reasonable relation to the defendant's duty to make restitution or that tend to prevent the future commission of crimes." State v. Williams, 97 Wn. App. 257, 263, 983 P.2d 687 (1999).

Z was neither a named victim nor an eyewitness and, while the child was interviewed by the defense before trial and identified as a witness in the State's trial memorandum, Z did not testify against Fareed, as he entered a guilty plea. In the pretrial interview, Z confirmed that I.M. and R previously reported that Fareed had sexually abused them, and that Fareed used physical discipline on all the children as punishment.

Because we remand for the court to conduct analysis on the record as to any conditions of Fareed's sentence impacting his constitutional right to parent, this will necessarily capture the NCO provision specific to Z, including whether this provision is appropriate given that the child neither witnessed the abuse nor actually testified.